UNITED STATES, Appellee

v

HENRY W. CONRAD, Lieutenant Colonel, U. S. Air Force, Appellant

15 USCMA 439, 35 CMR 411

No. 16,854

July 2, 1965

*Lieutenant Colonel Joseph B. McMullin* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman*.

*Major Neil Kasdan* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

### Opinion of the Court

KILDAY, Judge:

Appellant was originally tried by general court-martial, convened at March Air Force Base, California, on

August 15th and 16th, 1962, for conduct unbecoming an officer, in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933. The single specification laid thereunder alleged that the appellant had, on or about June 2, 1962, while in an automobile located on Main Street in Riverside, California, willfully, wrongfully, and indecently exposed his penis to public view while attempting to masturbate. Despite his plea to the contrary, he was found guilty as charged and was sentenced to dismissal and forfeiture of all pay and allowances. The sentence was approved by the convening authority. A board of review in the office of The Judge Advocate General of the Air Force set aside the findings and sentence and ordered a rehearing. A certificate for review of the decision of the board of review was thereafter filed with this Court by The Judge Advocate General, United States Air Force. In addition, we granted the appellant's cross-petition for review. This Court affirmed the decision of the board of review and authorized a rehearing. See United States v Conrad, 14 USCMA 344, 34 CMR 124.

The case was reheard upon the identical allegations by a general court-martial sitting at March Air Force Base, California, on April 14th and 17th, 1964. Appellant again pleaded not guilty, was again found guilty, and was sentenced to a dismissal alone. The convening authority approved the adjudged sentence and a board of review affirmed the same.

The facts material to the decision we make of this case are adequately stated in our former opinion in United States v Conrad. 14 USCMA, at page 346, 34 CMR, at page 126.

We quote from our opinion when this case was before us for review after the first trial:

"In the case at bar, the evidence for the prosecution is minimal, albeit sufficient. The accused categorically denied committing the act charged and the only witness who viewed the 'willful and wrongful exposure,' Detective Walters, admitted that his view of the exposure was only for 'an instant.' . . . Aside from Walters' instantaneous perception, the evidence for the prosecution amounts to no more than suspicion and conjecture.

"In addition to his denial, accused presented photographs of himself seated in his Volkswagen parked parallel to the curb in front of the Imperial Hardware Store. The photographer testified that the pictures were taken from inside the display window and that the level of the lens of the camera was the same as the eye level of a man the height of the witness Walters. Although the accused's lap is not visible in these photographs, the witness Walters insisted that from his position he 'could see all of the Colonel's lap.' "

Earlier, in the opinion, we had commented that the record showed that:

". . . In order to get a better view, Walters stepped inside the display window, thereby raising his eye level some six inches."

The records of both trials show that the ability of Detective Walters to see what he claimed to have seen was a very hotly contested issue at his first trial and that Walters was vigorously cross-examined at the first trial by showing him the pictures, taken at his eye level. At the second trial the law officer refused to admit into evidence the photographs utilized in the first trial. However, testimony and physical evidence was admitted at the second trial from a qualified surveyor and a civil engineer that they had, subsequent to the first trial, by use of a transit and mathematical calculations established a line of sight at the locale of the incident, utilizing the same Volkswagen. Appellant contends that this expert testimony establishes that it was impossible for Detective Walters to have seen the exposure of the person which he testified he had instantaneously perceived.

The record of the second trial reveals that at the first trial defense counsel, by cross-examination of Walters, had him fix his location and

altitude with meticulous precision. Among other things, the witness illuminated his position by drawing, before the court, a diagram of the display window, fixing his location and stating specifically that his position in the display window was six inches above the floor of the store. At no time did he place himself at any higher elevation, notwithstanding the careful cross-examination on that specific question.

At the second trial Detective Walters effectively eliminated the question of his inability to see as reflected by the photographs and the anticipated expert testimony of the surveyor and civil engineer. This was accomplished by stating at the second trial that not only was he standing on a platform raised six inches above the floor, but was also balancing himself on one foot on a small bench, twelve inches high, resting on the six-inch platform inside the display window— a detail of vast importance he had not mentioned before. His only explanation for failure to so inform the original court was that he was not asked the question. This very material change in his current testimony could have influenced either the court-martial, the convening authority, or the board of review in appraising Walters' credibility.

We, however, are bound by a different rule. In United States v Polak, 10 USCMA 13, 14, 27 CMR 87, we said:

"We are confronted in the first issue with an attack upon the believability of the Government's key witness, who furnished the only direct evidence of the accused's performance of the despicable act in question. That determination was submitted to the court-martial, the convening authority, and the board of review, and their decision is ordinarily conclusive on this Court, although, 'A case might conceivably exist in which a key witness, and his or her testimony, could not— as a matter of law—serve as a vehicle for conviction.' United States v Washington, 2 USCMA 177, 7 CMR 53."

We submit that this case approaches the case which "might conceivably exist." This is especially true in that the offense here charged is akin to that category of accusations " 'easy to be made, hard to be proved, but harder to be defended by the party accused, though innocent.' " Paragraph 199, Manual for Courts-Martial, United States, 1951. See also paragraph 153, ibid.

When this case was originally before us, we affirmed a holding by the board of review that it was prejudicial error for the law officer to have failed to give the court-martial, sua sponte, a limiting instruction on testimony by Detective Walters that during his questioning of appellant at the police station following his arrest, appellant, in effect, admitted having committed other similar acts at prior unstated times and to having a sexual problem of long standing.

At the second trial Walters again testified that after he had arrested appellant he took him to the police station and questioned him. During this questioning, Walters testified that he asked accused "if he had ever done this before" and appellant said, " 'No, not in Riverside.' " Walters further testified that he asked appellant how long he felt he had had a sexual problem. At first appellant did not answer and he asked him again. He said to appellant words to the effect, one week, six months, two years, ten years? Allegedly, appellant replied, " 'A long time.' " This was substantially the evidence of misconduct not charged, referred to above, which resulted in our affirmance of the board's action after the first trial.

At the second trial, in its case in chief, the Government placed in evidence practically all of the appellant's testimony as a witness in his own behalf at the first trial and his out-of-court statement which had also been previously admitted. (He did not testify at this trial.) In that testimony the appellant denied committing the offense, but did not deny he may have, because of the nature of his dress, inadvertently exposed himself.

In his former testimony, appellant gave a different version of the colloquy with Walters as to whether he had engaged in such alleged conduct on prior occasions. His version was that Walters asked him, " 'Have you ever done anything like this before in Riverside?' " He said, " 'No, of course not.' " The difference in versions might be of significant importance as to the probative value of the testimony. We observe parenthetically that the probabilities would lie with appellant's version. Subdivision 1, Section 311, of the Penal Code of California, provides that every person who willfully and lewdly exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby, is guilty of a misdemeanor. The section also provides that upon the second and each subsequent conviction under subdivision 1 every person so convicted is guilty of a felony and is punishable by imprisonment for not less than one year. It seems reasonable that a vice squad detective would determine early in his investigation whether a misdemeanor or felony is involved.

In appellant's out-of-court statement, placed in evidence by the Government, he stated:

". . . I did not realize that I was exposing myself and that if I had it was accidental."

The statement also contained the following:

"I did not state to Detective Walters that I had been masturbating on this occasion, nor did I state that I had done anything like this before or that I ever had an urge to do so."

During the second trial the law officer gave the following instruction limiting the purpose for which other misconduct not charged might be considered.

". . . The court is advised that any evidence indicating that the accused may have committed other offenses or acts of misconduct can not be considered by the court except for the purpose of proving material facts of an offense with which the accused is now charged. The general rule is that evidence that the accused has bad moral character may not be introduced for the purpose of raising an inference of guilt. Furthermore, the evidence from which it can be inferred that the accused may have committed other offenses or acts of misconduct is not admissible as tending to prove his guilt on the basis of an inference that such evidence shows that the accused has a disposition to do acts of the kind committed or criminal acts in general. The evidence of other offenses or acts of misconduct was admitted into evidence solely because it tends to prove a material fact with reference to an offense charged and the court is advised to consider such evidence for this purpose only."

In the previous consideration of this case, the board of review held and we affirmed that an instruction limiting the Court's consideration of evidence of other misconduct not charged to the purpose for which it was admitted was required. United States v Conrad, supra, at page 346. See also United States v Lewis, 14 USCMA 79, 33 CMR 291; United States v Back, 13 USCMA 568, 33 CMR 100; United States v Bryant, 12 USCMA 111, 30 CMR 111.

We proceed, therefore, to the consideration of the question of the purpose for which evidence of such other misconduct is admissible in a prosecution for indecent, or lewd, exposure of the person.

"At common law indecent exposure of the person in a public place, wilfully and intentionally, in the presence of an assembly, was a misdemeanor." [93 ALR 996, 997.]

In Perkins v Jeffery, 2 King's Bench Div. 702 (Eng.) (1915), the court had before it a charge of indecent exposure, in a public park, with intent to insult a certain named female. In consideration thereof, the court said:

443

". . . Upon the hearing of the charge in the present case the complainant had to prove, first, that the respondent had exposed himself; secondly, that he had done so wilfully and not accidentally; and, thirdly, that he had done it with intent to insult her." [*Ibid.*, at page 707.]

Evidence was introduced to show that Jeffery had been guilty of a systematic course of conduct by indecently exposing himself with intent to insult females on other occasions at that place and about the same hour. The dates of the other occasions, however, were not before the court. There the court stated:

". . . [U]nless it appeared clearly that the defence that the act was not done wilfully or with intent to insult a female was going to be relied upon, and that the other occasions were sufficiently proximate to the alleged offence to show a systematic course of conduct, we think the evidence should not be admitted. The case of *Rex* v *Bond* [2 K. B. 389 (1906)], and particularly the judgment of Bray J. at p. 418, is an authority which would justify the admission of such evidence; see also Stephen's Digest of the Law of Evidence (8th ed.), art. 12: 'When there is a question whether an act was accidental or intentional, the fact that such act formed part of a series of similar occurrences, in each of which the person doing the act was concerned, is deemed to be relevant.' But it is, we think, open to doubt whether evidence is admissible to prove a 'system or course of conduct' unless it is relevant to negative accident or mistake, or to prove a particular intention: see the judgment of Lord Reading C. J. in *Rex* v *Boyle and Merchant* [3 K. B. 339, at page 347 (1914)], where he said this: 'We think that the ground upon which such evidence is admissible is that it is relevant to the question of the real intent of the accused in doing the acts. Its object is to negative such a defence as mistake, or accident, or absence of criminal intent,

and to prove the guilty mind which is the necessary ingredient of the offence charged. There is, as is apparent from a consideration of the authorities, an essential difference between evidence tending to show generally that the accused has a fraudulent or dishonest mind, which evidence is not admissible, and evidence tending to show that he had a fraudulent or dishonest mind in the particular transaction the subject-matter of the charge then being investigated, which evidence is admissible. It has been laid down that there must be a nexus or connection between the act charged and the facts relating to previous or subsequent transactions which it is sought to give in evidence to make such evidence admissible.' Having regard to what was said in the House of Lords in the case of *Rex* v *Christie* [A. C. 545 (1914)] as to the practice in a criminal case of guarding against the accused being prejudiced by evidence which though admissible would probably have a prejudicial influence on the minds of the jury out of proportion to its true evidential value, we think that such evidence as to other occasions should not be admitted unless and until the defence of accident or mistake, or absence of intention to insult, is definitely put forward."

As more succinctly stated in 93 ALR 996, 998, Criminal offense predicated upon indecent exposure, I(b), Intent:

"Evidence of similar conduct on former occasions, in a prosecution under the Vagrancy Act for exposure of the person in a place of public resort with intent to insult a female, while admissible to rebut the testimony of mistaken identity, or to show that the act was done wilfully and not accidentally, is not admissible until it clearly appears that the defense that the act was not done wilfully or with intent to insult a female is relied upon, and that the other occasions were sufficiently proximate to show a systematic course of conduct. Perkins

v Jeffery [1915] 2 K. B. (Eng.) 702—Div. Ct."

In the frequently cited case of Harvey v State, 57 Tex Crim 5, 121 SW 501, 136 American State Reports 971 (1909), the Court of Criminal Appeals of Texas, stated:

"Upon the trial appellant undertook to show that the exposure of his person, if there was such exposure, was unintentional and accidental. In this state of the testimony, proof was admitted of other similar acts which had been complained of by Thompson, near whose house such indecent exposures occurred. On the trial the court charged the jury, among other things, as follows: 'The evidence introduced in this case of acts of the exposure of the person of the defendant, other than the act charged in the information, you cannot consider as substantive evidence as to the guilt of the defendant; but it can only be considered as bearing on the intent of the defendant, and you cannot consider it for any other purpose.' . . . We think the facts required such a charge as that given by the court, and that it is not subject to any serious objections. It expressly stated the purpose for which this evidence was admitted, and for which it was intended, and tells the jury they cannot consider it for any other purpose."

In Annotation, 94 ALR2d 1353, 1355, the following appears:

"It is to be noted that while the subject is not here discussed, indecent exposure is an offense on the trial of which the courts will give considerable latitude to the introduction of evidence of other similar acts, since *such evidence tends to show intent as contrasted with inadvertence.*" [Emphasis supplied.]

See United States v Warren, 6 USCMA 419, 20 CMR 135. See also, Young v State, 159 Texas Crim 164, 261 SW2d 836 (1953); Young v State, 159 Texas Crim 163, 261 SW2d 838 (1953); Rodriquez v State, 170 Texas Crim 275, 340 SW2d 41 (1960). See

Annotations on subject "Evidence—other sexual offenses" in each of the following: 167 ALR 565, 621; 77 ALR 2d 841, 895; 94 ALR2d 1353, 1355; and Annotation, "Criminal offense predicated upon indecent exposure," 93 ALR 996.

Two cases in the Supreme Court of Iowa will serve to illuminate the purpose for which evidence of other misconduct may be admitted and the concomitant limiting instruction which the admission of such evidence requires. We summarize the holding in each of such cases.

In the earlier case of State v Stice, 88 Iowa 27, 55 NW 17 (1893), the Iowa Supreme Court held that on a trial for lewdness, committed by the willful exposure of defendant's person on a particular day, in a public place, in the presence of the prosecuting witness, it is not error to admit evidence of similar acts by defendant on the same day, and on the preceding day, and in the presence of other persons than the prosecuting witness, where, by instructions, the consideration of such evidence is limited to the determination of whether or not the act charged was willfully done.

On the other hand the same court, citing State v Stice, *ibid.*, held in State v Vance, 119 Iowa 685, 94 NW 204 (1903), that in a prosecution for lewdness, where defendant admitted in open court, and before the jury, that, if the acts charged were done, they were designedly done, it was error to admit, for the purpose of proving intent, evidence showing that defendant had at other times, and to other persons than complainant, made indecent exposures of his person.

This Court has held that a negligent indecent exposure of the person does not constitute an offense in military law. United States v Manos, 8 USCMA 734, 25 CMR 238. The authorities hereinbefore cited establish that an offense does not exist when the exposure is due to inadvertence or accident. The elements of the offense of indecent exposure are those alleged in the specification in this

**445**

case; that is, that the exposure was willfully and wrongfully done. Government counsel saw fit to place in evidence, in his case in chief, the out-of-court statement of appellant which contained the exculpatory statement by appellant that if he exposed his person it was accidental. Government counsel also placed in evidence in chief, as statements made by appellant, his testimony at the prior trial in which he disclaimed any willful or wrongful exposure of his person. Either or both of these statements is sufficient to raise the affirmative defense of lack of intent to expose himself and to constitute a contention that he had not "willfully and wrongfully" exposed his person. United States v Johnson, 3 USCMA 209, 11 CMR 209.

The evidence of other misconduct not charged was therefore pertinent insofar as it might tend to refute the defense thus interposed and as it might tend to show that any exposure of his person was willful and wrongful as contrasted with inadvertent or accidental. This then was the purpose for which evidence of other misconduct was admissible and the purpose to which it should have been limited by the instructions of the law officer.

Our next inquiry, then, is whether the limiting instruction given to the court-martial by the law officer was sufficient. The instruction, hereinbefore quoted, informed the court-martial, and we believe adequately, of the purposes for which evidence of other misconduct could *not* be considered, and limited its consideration to the purpose of proving a material fact of the offense with which the accused "is now charged." Therein the law officer very closely followed the provisions of paragraph 138*g*, Manual for Courts-Martial, United States, 1951.

The affirmative submission as to the purpose for which such evidence *could* be considered was the following:

". . . The evidence of other offenses or acts of misconduct was admitted into evidence solely because it tends to prove a material fact with reference to an offense charged, and the court is advised to consider such evidence for this purpose only."[1]

We do not criticize the language used but we do very seriously question whether it goes far enough to direct the attention of the court-martial, in an affirmative manner, to the only and very limited purpose for which such evidence was admissible in this case; that is, the pertinence of such evidence insofar as it might tend to refute the affirmative defense of accident or inadvertence.

The authorities, heretofore cited, agree that, upon the trial of an accusation of indecent exposure of the person, if evidence of other similar misconduct is admitted, it is essential that the triers of fact be instructed that such evidence may be considered only for the purpose of determining whether the act was willful and wrongful as contrasted with inadvertent. Tested by that rule, the instruction given in this case, that it was admitted "solely because it tends to prove a material fact with reference to an offense charged," was insufficient and erroneous.

We must, therefore, consider whether such error was prejudicial in this case. We believe that it was. We arrive at this conclusion because: the incriminating evidence reflected only the instantaneous perception of but one witness, while the remainder of the evidence amounted to "suspicion and conjecture"; the only witness to the alleged offense very materially changed his testimony; the existence of the affirmative defense that any

[1] We pretermit consideration of the question as to whether the language, "because it tends to prove a material fact with reference to an offense charged," may be upon the weight of the evidence and proceed to a determination of the substantive question presented. We do observe that a better practice would be to so frame the instruction as to leave the triers of fact free to determine whether such evidence "tends to prove" anything.

446

exposure was accidental; the unrebutted evidence of the good character of the accused; his long and outstanding military career; and the fact that the evidence is far from conclusive. We are left, therefore, with the inescapable conclusion that, in this case, the omission to so instruct was prejudicial. Because of the very limited purpose for which such evidence was admitted in this case, it is extremely important that the court be instructed with great care as to its application in order that the evidence not have a prejudicial influence on the minds of the court members far out of proportion to its true evidential value. Perkins v Jeffery, supra.

The record in this case has been reviewed by us, with great care, on four separate occasions.[2] The evidence of guilt is far from conclusive.

Our several reviews of this record leave us with the strong belief that conviction reasonably could have resulted from the utilization of the evidence of other misconduct for a purpose other than that for which it was authorized. The entire record presents more than a fair risk that the rights of the appellant were substantially prejudiced by the failure of the law officer to limit, properly, the court's consideration of the accused's alleged prior misconduct. We repeat from United States v Back, 13 USCMA 568, 572, 33 CMR 100:

". . . Certainly, the evidence is not such as to impel a morally certain conviction of accused's guilt in the minds of the fact finders. Nor may it fairly be stated that the unrestricted consideration of the evidence of other misconduct had no effect in their deliberations."

Recently, the United States Court of Appeals for the District of Columbia, on another but closely related question, used language which is apropos here. In Awkard v United States, decided June 3, 1965, — F2d —, Judge Washington stated:

". . . Cautionary instructions, copiously provided by the trial judge in this case, do not give the accused adequate protection. They cannot prevent the jury from considering prior actions in deciding whether appellant has committed the crime charged. The courts need not rest on the assumption that juries can compartmentalize their minds and hear things for one purpose and not for another. The Supreme Court took the lead in *Jackson v Denno,* 378 US 368 (1964), by going behind the historic assumptions of the law of evidence and considering the psychological reality of the jury's functioning, in that case as it related to its consideration of the voluntariness of confessions."

As Judge Washington has indicated it may be extremely difficult to so frame a limiting intruction as to give full protection to the rights of an accused on trial. He does emphasize, however, that the accused is entitled to all of the benefits which the law provides in a proper limiting instruction. Since the appellant did not receive them in this case reversal is required.

At best the incriminating evidence in this case is gossamer in nature. Deficiencies in the evidence are similar to those commented upon in Hearn v District of Columbia, 178 A 2d 434, 439, 94 ALR2d 1348 (Mun Ct App, DC) (1962):

"The evidence by the police officers who were deliberately looking for appellant, who stationed themselves in an elevated area just off the alley proper to get the best possible view of him, and who were the only persons who actually testified to seeing his complete naked condition in his room, coupled with the absence of testimony by any other person using the alley on either night and of any showing

---

[2] The record was reviewed and petition for review granted after the first trial and that record again reviewed upon original action by this Court. United States v Conrad, 14 USCMA 344, 34 CMR 124. It was again reviewed on petition for review after the second trial and on the present disposition of the case.

that appellant had made any effort to attract attention to himself, balanced against the testimony and evidence of appellant that he had no intention to wilfully expose himself to persons in the alley and buttressed by his conceded excellent character and reputation, falls short of establishing beyond a reasonable doubt that appellant was guilty of the acts charged in the information."

See also Commonwealth v Bishop, 296 Mass 459, 6 NE2d 369 (1937).

The record indicates that the appellant is forty-three years of age. He is married, living happily with his wife, who appeared as a witness in his behalf, and has one son who is a college student. He originally entered the Air Force in 1942 and, with a short period in the reserve, has remained on active duty since that time. He is a pilot and flew 130 missions in the China Theatre during World War II and was awarded decorations certifying to the nature of that service. He placed his character in issue and supported his good character by the testimony of numerous officers during the first and second trial. Neither by cross-examination nor affirmative testimony was his good character attacked. He also placed in evidence his efficiency reports over a considerable period of his service, all of which are of the highest order. Essentially they rate him as an "excellent officer seldom equaled."

His established reputation for good character cannot be lightly regarded. It is highly valuable to ▆▆▆ any accused and depending on the nature of the charge and the defense, it may be of greater value in one type of case than in another. This is especially so in instances wherein sexual offenses are alleged. As we stated in United States v Phillips, 3 USCMA 137, 142, 11 CMR 137, "evidence of good character is often the best, if not the only, defense which the accused can produce." Its prime function is an attempt to show that an accused, being of good character, would not commit the particular crime, because of the great amount of moral degradation which is involved, and also to show that his version of the events should be believed, because of his good reputation for truth and veracity. Evidence of good character may even be sufficient to generate a reasonable doubt as to an accused's guilt. The Supreme Court in Edgington v United States, 164 US 361, 366, 41 L ed 467, 17 S Ct 72 (1896), stated:

". . . The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

The offense is alleged to have been committed June 2, 1962, so that three years have elapsed. During that time appellant has been subjected to two protracted trials and the review incident thereto. Nearly eighteen months have elapsed since our last disposition of this case. In the event of another conviction, an additional consumption of time and effort is to be anticipated.

Due to the nature of the charges against him, it is evident that appellant has undergone very substantial punishment. His career as an officer in the Air Force has been wrecked as, no doubt, is apparent to him. The record reflects that subsequent to charges in this case appellant sought to retire. Obviously that application has not been approved, as he remains on active duty. Should the pendency of this case have contributed to the denial of that application or the postponement of action, the decision we now make will remove that hindrance.

The decision of the board of review is reversed and the case dismissed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The only question in this case is whether the instruction allowed the court-martial to consider the accused's pretrial admission of previous misconduct for an improper purpose. The instruction expressly prohibited consideration of the evidence to raise an inference of guilt because of accused's

448

bad moral character or his "disposition" to engage in misconduct. This part of the instruction is unimpeachable. What part of the instruction then is wrong? According to the majority, the instruction is erroneous because the court-martial was directed to consider the evidence of previous misconduct "solely" for its tendency to prove a "material fact" in issue, whereas it should have been informed that the evidence bears only on whether the accused's exposure, if found, was deliberate rather than accidental. According to the evidence, the nature of the exposure was the only real issue in the case. Consequently, the instruction restricted the court-martial to the very purpose for which the majority admits the evidence could be considered, namely, whether the exposure was intentional or accidental. In my opinion, therefore, the instruction was neither erroneous nor prejudicial.

I would affirm the decision of the board of review.