THE STATE OF OHIO *v.* PARENTEAU.

(No. C-90-CRB-7139—Decided
May 24, 1990.)

Hamilton County Municipal Court.

*William M. Al'ugdah,* assistant prosecuting attorney, for plaintiff.
*Henry E. Sheldon II,* for defendant.

MARK P. PAINTER, J. This matter was tried by the court on May 7, 1990, the defendant, Pamela L. Parenteau, having been charged by the Hamilton County Sheriff's office with public indecency, in violation of R.C. 2907.09.

Defendant was part of a "lingerie fashion show" at a nightclub named "Scandals" in western Hamilton County. The charge arose from the modeling by defendant of a lace brassiere which was alleged by the officer to be "see-through," in that the officer testified he could observe a nipple area through the lace fabric. Defendant was apprehended after she had retired to a back room to change her clothing. The officers asked Parenteau for the clothing she was wearing, which they confiscated.

The evidence produced in court included a lace brassiere, a pair of underpants, stockings, and a small square of pantyhose fabric. The panties and stockings were not relevant, considering that the charge was not based upon anything in connection with the defendant's lower anatomy. Defendant testified that she wore the pantyhose fabric under the bra in order to be certain that it was not transparent in the area of the nipple. Defendant further stated that she was wearing two such squares, one on each breast, during the performance, but that only one was in evidence, since she had already removed her bra when she was arrested, and the other square had dropped out and was not recovered by the officers. An additional witness testified that she saw defendant cutting pantyhose to make the squares before she dressed. Much ado was made about whether one or two squares were worn, but in the court's view of the law, the existence or nonexistence of the pantyhose material within one side of the brassiere is not controlling.

The question presented is whether the defendant can be convicted of public indecency, in violation of R.C. 2907.09, for wearing a lace brassiere which totally covered her breasts, but was partially transparent, or "see through." If so, does the insertion of pantyhose material, rendering the brassiere less "see through," change the result?

R.C. 2907.09 states, in pertinent part, as follows: "(A) No person shall recklessly do any of the following, under circumstances in which his or her conduct is likely to be viewed by and affront others, not members of his or her household:

"(1) Expose his or her private parts * * *."

The section goes on to prohibit other conduct, none of which is involved here.

Many issues could be raised, including whether the "circumstances," in a nightclub called "Scandals," were such that the conduct would be "likely

to affront others." The only testimony adduced on this issue was the comment by the officer when asked by the prosecutor whether he enjoyed the show, that he did not.

However, the resolution of this case is quite clear (though perhaps not transparent), in that the definition of "private parts" does not include the situation here. Quite simply, a breast is not a "private part" within the meaning of this section. Therefore, it is not necessary for the court to determine whether the lace covering, with or without the pantyhose material insert, would negate the finding of guilt in this case.

No constitutional argument was made. See, e.g., Erznoznik v. City of Jacksonville (1975), 422 U.S. 205. Nor does this court need to reach the issue of whether the conduct herein could be prohibited by the state, since the state has clearly not tried to prohibit it by the plain meaning of this statute.

In Ohio Jury Instructions, the term "private parts" is defined to mean "genitals." 4 Ohio Jury Instructions (1982), Section 507.09. Likewise, The American Heritage Dictionary of the English Language (1981) 1042, defines "private parts" as "the genitals." The Oxford English Dictionary (2 Ed. 1989) 516, defines "private parts" as follows: "the external organs of sex * * *." A glance at Gray, Anatomy of the Human Body (29 Ed. 1973) 1331, verifies that the female generative organs are all located within the vaginal region, and none is anywhere near the breast area.

Many cases could be cited for the above proposition, but clearly it is beyond dispute that breasts and genitals are two separate things. "These females fondled their breasts and genitals * * *." Ellwest Stereo Theatres, Inc. v. Alabama, ex rel. Parsons (Ala. 1979), 371 So. 2d 1.

In State v. Jones (1970), 7 N.C. App. 166, 171 S.E. 2d 468, a female defendant was charged under a statute prohibiting the "indecent public exposure of the private parts of his or her person in any public place * * *." Id. at 167, 171 S.E. 2d at 468. The state sought to define "private parts" as including the female breasts. After a discussion of medical terminology, the court held that "[t]he female breasts are not private parts within the terms of the quoted portion of the statute.

"* * * Neither the legislature, by its enactment of laws, nor the courts, by interpretation thereof, can make a man a gentleman nor a woman a lady — this molding must come from other elements of society." Id. at 169-170, 171 S.E. 2d at 470. In State v. Moore (Ore. 1952), 241 P. 2d 455, 459, the Supreme Court of Oregon held that "[i]t is hornbook law that, whenever and wherever the terms 'privates' or 'private parts' are used as descriptive of a part of the human body, they refer to the genital organs. * * *" See, also, State v. Crenshaw (1979), 61 Haw. 68, 597 P. 2d 13 (female breasts are not genitalia or "private parts," citing State v. Jones, supra).

As it is quite certain that defendant's conduct is not prohibited by the statute under which she was charged, the defendant must be acquitted.

*Defendant discharged.*