**UNITED STATES, Appellee,**

v.

**Ronald G. CHOATE, Sergeant First Class U.S. Army, Appellant.**

**No. 64,657.**
**CM 8900679.**

U.S. Court of Military Appeals.

Argued Jan. 10, 1991.

Decided July 10, 1991.

For Appellant: *Captain Gregory A. Gross* (argued); *Major Michael Kelleher, Captain Brian D. Bailey, Captain W. Renn Gade* (on brief).

For Appellee: *Captain Jonathan F. Potter* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

In January and February of 1989, appellant was tried at Fort Benjamin Harrison, Indiana, by a special court martial composed of officer and enlisted members. Contrary to his pleas, he was found guilty of three specifications alleging violations of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge. The convening authority approved this sentence. On February 23, 1990, the Court of Military Review affirmed the findings and sentence in a short-form opinion.

This Court granted review of the following issue raised by appellate defense counsel:

WHETHER "MOONING" [1] IS AN IN-DECENT EXPOSURE.

This question is raised with respect to only one of the offenses of which appellant was found guilty. We hold that, under the circumstances of the instant case, the challenged specification states an offense under Article 134 and the evidence of record supports the findings of guilty beyond a reasonable doubt. *United States v. Sanchez*, 11 USCMA 216, 217–18, 29 CMR 32, 33–34 (1960); *United States v. Snyder*, 1 USCMA 423, 426, 4 CMR 15, 18 (1952).

The evidence of record shows that in June 1987, Georgia June Cline was on her way to work when she noticed appellant standing nude in his trailer and masturbating. A few days later, Mrs. Cline again saw appellant masturbating in his trailer, and he was facing her. That morning she reported the incidents to the trailer court manager. A few days after the second incident, Mrs. Cline again saw appellant masturbating in the window and looking at her. When she returned from work, she called the police. When the police arrived, Mrs. Cline went with them to appellant's trailer. Appellant was not there, so his wife called him at work. Later that day, appellant came over to Mrs. Cline's trailer and told her that his wife was pregnant and that she might need Mrs. Cline's help. Appellant then told her, "You did it to me too." These acts formed the basis for conviction on the first specification.

In June 1988, Mrs. Nancy Chojnacki and her husband, who worked with appellant, moved into a trailer next to appellant's trailer. During one of her occasional visits with appellant and his wife, she had felt "uncomfortable" because appellant was sitting in a chair wearing shorts without underwear which exposed his genitals. Another time, when he was helping Mrs. Chojnacki plant flowers, he bent down, and his penis became exposed. Then, he said, "You saw that, didn't you?" Later that month, when she took some magazines to his trailer, he answered the door while naked. Still later Mrs. Chojnacki agreed to go with him to return a rented car. On the way back to the trailer park, he stopped at a stop sign, turned off the engine, and pulled his pants down to show her—as she explained it—"how little pubic hair" he had. Then he asked her to "show me yours." When she refused, "he said that's not fair," but he did take her home.

On July 26, at about 6 o'clock in the morning, appellant—who was wearing only a green Army T-shirt—knocked on Mrs. Chojnacki's door and offered to empty her trash. She accepted and went to her car to go to work. While backing out of the driveway, she saw appellant standing next to the garbage cans. As Mrs. Chojnacki continued down the driveway, appellant lifted up his T-shirt and "showed [her] his butt." The next day, he inquired how she had liked the "moon" he had given her. This conduct was the subject of the challenged specification.

The conduct covered by the third specification occurred on July 29. Appellant again came to her trailer to offer to take out the trash. He was wearing shorts and had an erection that, as Mrs. Chojnacki explained, "was just sticking right through ... his shorts." Appellant requested to use her bathroom. While in there, he told her that "a lot of women like watching men jack; do you like watching that?" When he left the bathroom, he told Mrs. Chojnacki, "Look at me; I'm hard as a rock."

- - -

Appellant was found guilty, *inter alia,* of the following offense under Article 134:

In that [appellant] did, at the Hess Trailer Court, located on Fort Benjamin Harrison, Indiana, on or about 26 July 1988, while standing outside with only a green army Tee shirt on, willfully and wrongfully expose in an indecent manner to public view his buttocks.

On appeal, he challenges this finding of guilty for several reasons. He initially contends that indecent exposure, as a matter

---

**1.** The *New Dictionary of American Slang* 282 (1986) defines "mooning" as "exhibit[ion] of one's bare buttocks as a defiant or amusing gesture."

of military law, should be limited to incidents where genitalia are exposed. He also argues that, even if this civilian limitation on this offense is not recognized, the required exposure must be obscene and excite lust. His undraping, he asserts, was a mere prank which he impliedly suggests provoked only laughter. Finally, he asserts that the offense of indecent exposure should be limited to incidents where sexual aggression is intended and not apply to those situations where simple insult or amusement is the object.

Appellant's challenges are all premised on the assumption that he was found guilty of the military offense of indecent exposure. *See generally* para. 88, Part IV, Manual for Courts–Martial, United States, 1984.[2] His legal arguments assert that, for various reasons, the challenged specification or evidence adduced thereon failed to establish the elements of this particular offense as a matter of military[3] or civilian law.[4] Accordingly, he argues that his conduct in parading naked before the wife of a fellow soldier and neighbor on post could not be prosecuted at a court-martial.

■ We note, however, that appellant was not charged with indecent exposure as an assimilated civilian crime under the third clause of Article 134. *See United States v. Schumacher*, 2 USCMA 134, 7 CMR 10 (1953). Moreover, he was not charged with indecent exposure under a particular provision of the Uniform Code of Military Justice prohibiting this offense. Instead, as noted above, he was charged

with exposure of his buttocks in an indecent manner under the service-disorder or -discredit clause of Article 134. *See generally United States v. Davis*, 26 MJ 445, 448 (CMA 1988). Accordingly, the specific elements of the crime of indecent exposure as a matter of civilian or military law are not particularly relevant. *See United States v. Sanchez*, 11 USCMA at 217, 29 CMR at 33. *Cf. United States v. Caune*, 22 USCMA 200, 201, 46 CMR 200, 201 (1973).

The case of *United States v. Sanchez, supra*, is closely analogous to the case at bar. There, a soldier was charged with committing an act of carnal copulation with a chicken. The defense contended that this act did not constitute sodomy under Article 125, UCMJ, 10 USC § 925, or an indecent act with another person, prohibited under Article 134. *See* App. 6c, Sample Specification 149, Manual for Courts–Martial, United States 1951. This Court held that the charged conduct's purported failure to constitute these particular offenses did not preclude its prosecution as a service-discrediting offense under Article 134. The real question, the Court said, was whether the "conduct ... directly and adversely affected the good name of the service." 11 USCMA at 218, 29 CMR at 34. In the case at bar, the question is whether the charged conduct was "palpably prejudicial to good order and discipline." *See United States v. Snyder*, 1 USCMA at 426, 4 CMR at 18.

Of course, command authorities are not free "to eliminate ... vital elements of

2. *See also* App. 6c, sample specification 157, Manual for Courts–Martial, United States, 1969 (Revised edition); App. 6c, sample specification 147, Manual for Courts–Martial, United States, 1951; App. 4, sample specification 155, Manual for Courts–Martial, U.S. Army, 1949; App. 4, sample specification 145, Manual for Courts–Martial, U.S. Army, 1928.

3. Our decisions addressing prosecutions for indecent exposure have generally relied on the state court decisions representing the majority approach to this crime. *See United States v. Stackhouse*, 16 USCMA 479, 37 CMR 99 (1967); *United States v. Conrad*, 15 USCMA 439, 35 CMR 411 (1965); *United States v. Brown*, 3 USCMA 454, 460, 13 CMR 10, 16 (1953). *See generally*

*United States v. Davis*, 26 MJ 445, 448 (CMA 1988); 3 *Wharton's Criminal Law* § 317 at 164–65 (C. Tortia 14th ed.1980).

4. Most state court decisions addressing the question of whether indecent exposure requires exposure of genitalia are based on the language of the particular criminal statute in that jurisdiction. *See State v. Parenteau*, 55 Ohio Misc.2d 10, 564 N.E.2d 505 (1990); *Threet v. State*, 710 S.W.2d 98 (Tex. App.—Eastland 1986); *Duvallon v. District of Columbia*, 515 A.2d 724 (D.C. App. 1986). We have found, however, no military cases where indecent exposure was found which did not include exposure of genitalia. *See* n.3, *supra*. *See generally* Annotation, *Indecent Exposure: What is "Person?"*, 63 ALR 4th 1040.

recognized offenses and" direct "the remaining elements" be prosecuted as a service-disorder or discredit offense under Article 134. *United States v. Manos*, 8 USCMA 734, 736, 25 CMR 238, 240 (1958). Such prosecutorial action would be both codally and constitutionally impermissible. *See Parker v. Levy*, 417 U.S. 733, 753–54, 94 S.Ct. 2547, 2560–61, 41 L.Ed.2d 439 (1974); *United States v. Woods*, 28 MJ 318, 319 (CMA 1989); *United States v. Kick*, 7 MJ 82, 85 (CMA 1979). There normally must be some "ancient usage" supporting the allegation that such conduct itself is a discredit or disorder offense. *See United States v. Kick* and *United States v. Manos*, both *supra*. Moreover, it is the gravamen of appellant's conduct in light of its military context which must be considered. *See United States v. Davis, supra* at 448.

Turning to the record, the following circumstances were in evidence surrounding appellant's exposure of his buttocks. *See also United States v. Caune, supra* at 201, 46 CMR at 201; *United States v. Holland*, 12 USCMA 444, 445, 31 CMR 30, 31 (1961). First, it was done at 0615 on a neighbor's trailer lot on Fort Benjamin Harrison. Second, the exposure was made to the wife of a fellow servicemember. Third, the exposure was a part of a series of acts towards the same female which included exposure of his genitals. Fourth, his subsequent exposure was accompanied by lewd and lascivious comments to this same female. Fifth, this exposure was followed by questioning the next day by appellant of the victim to the effect of "how did you like that moon I gave you?" These circumstances suggest an offense akin to abusing a female on post or communicating indecent language to a female, which have long existed as disorder offenses under military law. W. Winthrop, *Military Law and Precedents* 731 (2d ed. 1920 Reprint). *See United States v. Caune, supra* at 201, 46 CMR at 201; *United States v. Snyder, supra* at 426, 4 CMR at 18.

Appellant also implies that the humorous or disrespectful nature of his conduct precludes a finding that his exposure was indecent. He predicates this argument on the definition of the term "indecent" in paragraph 90(c), Part IV, 1984 Manual, *supra*, which states:

"Indecent" signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations.

Basically, he argues that his conduct was not obscene in the sense contemplated by the Supreme Court in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

 We initially note that appellant was particularly charged and found guilty of exposing his buttocks in an indecent manner. Indecency in the context of Article 134 generally means conduct that is lewd and lascivious. *See United States v. Sanchez*, 11 USCMA at 218, 29 CMR at 34. In *United States v. Gaskin*, 12 USCMA 419, 421, 31 CMR 5, 7 (1961), we noted that such conduct must bear some element of "sexual impurity." Moreover, our holding in *Gaskin* was based in part on *Swearingen v. United States*, 161 U.S. 446, 451, 16 S.Ct. 562, 563, 40 L.Ed. 765 (1896), which suggested that obscenity "signif[ies] that form of immorality which has relation to sexual impurity." Thus, for purposes of indecency under Article 134, obscenity is only relevant insofar as it restates the requirement that the exposure be sexually oriented. *See United States v. Orben*, 28 MJ 172, 174–75 (CMA), *cert. denied*, — U.S. ——, 110 S.Ct. 157, 107 L.Ed.2d 115 (1989). We are convinced on the basis of the evidence noted above that appellant's act on the charged date could be rationally viewed in this light. *See United States v. Caune, supra*.

Finally, appellant implies that the criminality of conduct such as his should be limited to situations where sexual aggression, not disrespect, is intended. Appellant draws this standard from the commentary to the Model Penal Code. *Model Penal Code and Commentaries* § 213.5 comment 2 at 407–08 (1980). This Court, however,

has recognized that the related offense of indecent exposure under Article 134 requires only that the showing of one's person be "willfully and wrongfully done." *United States v. Conrad*, 15 USCMA 439, 446, 35 CMR 411, 418 (1965). *See United States v. Manos, supra* at 735–36, 25 CMR at 239–40. *See also* para. 88b, Part IV, 1984 Manual, *supra*. A similar allegation exists in the challenged specification. This Court has construed these words to mean that the charged conduct was done deliberately and in circumstances where it constituted a threat to good order and discipline. *See United States v. Davis*, 26 MJ at 448; *United States v. Sadinsky*, 14 USCMA 563, 565, 34 CMR 343, 345 (1964); *United States v. Gaskin, supra* at 421, 31 CMR at 7. *Cf.* R. Perkins and R. Boyce, *Criminal Law* 875–76 (3d ed.1982). Appellant's entire course of conduct from June through July 1988 established that he purposefully exposed himself to Mrs. Chojnacki under disruptive circumstances. This was sufficient.

■ We, of course, are well aware that simple nudity in and of itself is not a crime even if it occurs in the presence of others. *See United States v. Caune, supra* at 201, 46 CMR at 201. Moreover, our opinion today should not be construed as making criminal mere college-type pranks like "mooning," even if conducted on a military base. Our concern is with the specific facts of this case and the disrupted military environment resulting from appellant's continuous course of sexually degrading conduct toward the wife of a fellow soldier. *See generally United States v. Wilson*, 28 MJ 48, 50 (CMA 1989); *see also Barnes v. Glen Theatre, Inc.*, —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring in the result):

I reach the same result as does the majority. Several portions of the majority opinion trouble me, however, so I write to address those portions and to offer the rationale for my own vote to affirm appellant's conviction on the specification in question.

I

As the majority notes, "Appellant's challenges are all premised on the assumption that he was found guilty of the military offense of indecent exposure. *See generally* para. 88, Part IV, Manual for Courts–Martial, United States, 1984." Slip Op. at 425. Although the majority, shortly thereafter, casts aside this predicate for Choate's appellate challenge, Choate has a sound basis for his assumption: The specification in question tracks *precisely* the model specification offered in paragraph 88f of the Manual for charging indecent exposure.

The Manual suggests a specification alleging that the accused did "willfully and wrongfully expose in an indecent manner to public view his or her _____." By comparison, the instant specification charges that appellant did "willfully and wrongfully expose in an indecent manner to public view his buttocks." Accordingly, I have no doubt that appellant was charged with and convicted of the "military offense of indecent exposure"—long recognized under Article 134, Uniform Code of Military Justice, 10 USC § 934.

Correctly, the majority "note[s] that appellant was not charged with indecent exposure as an *assimilated civilian crime* under the third clause of Article 134" and that "he was not charged with indecent exposure under *a particular provision* of the Uniform Code of Military Justice prohibiting this offense." Slip Op. at 425 (emphasis added). What the majority has overlooked is that appellant *was* charged under the first clause of Article 134 with a disorder that is expressly recognized in the Manual and that he was so charged in a specification that precisely tracks the specification recommended in the Manual for charging such misconduct.

Under these circumstances, it seems unfitting for the majority to dismiss the premise for appellant's attack, as it does. Accordingly, I believe the majority errs when it finds that "the specific elements of the crime of indecent exposure as a matter of ... military law are not particularly relevant." *Id.* at 425.

## II

At this point, the question for me becomes: Assuming appellant is correct in any of his attacks on the efficacy of his conviction for indecent exposure, can his conviction nonetheless be affirmed as a simple disorder under Article 134?

I agree with the majority that "command authorities are not free 'to eliminate ... vital elements of recognized offenses and' direct 'the remaining elements' be prosecuted as a service-disorder or disrespect offense under Article 134." *Id.* at 425–426. I must admit, however, that I have a good deal of difficulty with the majority's conclusion that the circumstances of this case "suggest an offense akin to abusing a female on post or communicating indecent language to a female, which have long existed as disorder offenses under military law." *Id.* at 426.

Communication of indecent language is, indeed, a commonly acknowledged disorder under Article 134 (although the reference in the majority opinion to such language being communicated to a *female* is somewhat dated). *See* para. 89, Part IV, Manual, *supra.* The problem with analogizing appellant's acts to communicating indecent language is that the latter, as recognized in the Manual, requires the communication to be either oral or in writing, *see* para. 88b(1); and, of course, appellant's communication was neither. While I have no doubt that one may "communicate" by means of a physical gesture, *see United States v. Eichman,* 496 U.S. ——, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990); *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d

342 (1989), this offense—at least as it is commonly recognized in the Manual—does not seem to encompass that means of communication.

I am even more uncomfortable with the majority's analogy of appellant's misconduct to "abusing a female on post...." The authority cited for this offense—W. Winthrop, *Military Law and Precedents* 731 (2d ed. 1920 Reprint)—does mention this misconduct, but it does so only by citing five general court-martial orders dated a century or more ago. A computer search of the opinions of this Court since its inception 40 years ago reveals no instance in which this Court has reviewed a conviction for any such conduct. In fact, the only "abuse" offense expressly acknowledged in the current Manual is abusing a public animal, *see* para. 61, Part IV, Manual, *supra*—an analogy I certainly am unwilling to make. Moreover, even Winthrop's brief reference to abusing or maltreating one's wife or other female limits such misconduct to that which was "in the presence of other soldiers at a military post." Winthrop, *supra* at 731. Appellant's misconduct, it will be recalled, was in the presence only of the complaining witness.

Despite these misgivings with the majority opinion, I ultimately agree with the result it reaches. "Mooning" may not be indecent, as that concept has developed in our precedent; and it may not be an offense that is supported by "ancient usage" in the Manual for Courts–Martial. Some conduct, however, is so clearly and patently disorderly that common sense—rather than "ancient usage"—is sufficient to afford the necessary notice to a potential accused that such action is not tolerable by an orderly, civilized society.

This is such an instance. Under the circumstances fully set out by my Brothers,* appellant has no basis at all to complain that he was not on notice that his actions

---

* I join in the majority's penultimate paragraph, limiting our decision to the circumstances of this case. Slip Op. at 427.

would, at a minimum, constitute a simple disorder. Accordingly, whatever else it was (or was not), appellant's misconduct can be appropriately viewed in that fashion. *See United States v. Sanchez*, 11 USCMA 216, 217, 29 CMR 32, 33 (1960).