UNITED STATES, Appellee,

v.

James D. SMITH, Sergeant First Class U.S. Army, Appellant.

No. 66,195.
CM 9000327.

U.S. Court of Military Appeals.

Argued Nov. 12, 1991.

Decided July 29, 1992.

For Appellant: *Captain Edward T. Keable* (argued); *Colonel Robert B. Kirby* and *Captain James M. Heaton* (on brief); *Captain Brian D. Bailey.*

For Appellee: *Captain Jane F. Polcen* (argued); *Colonel Alfred F. Arquillan, Lieutenant Colonel Daniel J. Dell'Orto, Major Thomas E. Booth* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During December 1989 and January 1990, appellant was tried by a military judge sitting as a general court-martial at Fort Campbell, Kentucky. In accordance with his pleas, he was found guilty of attempted sodomy with a child, two specifications of rape, three specifications of sodomy, three specifications of taking indecent liberties with a female under the age of 16, and one specification of committing indecent acts, in violation of Articles 80, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 925, and 934, respectively. In addition he pleaded not guilty to wrongfully impeding a state preliminary hearing, but he was found guilty of that offense with exceptions, in violation of Article 134. Appellant was sentenced to a dishonorable discharge, confinement for 15 years, total forfeitures, and reduction to Private (E1). Pursuant to a pretrial agreement, the convening authority approved the sentence, but he suspended confinement in excess of 8 years and total forfeitures for 8 years, for a period of 8 years. On January 15, 1991, the Court of Military Review affirmed the findings of guilty and the sentence.[1] 32 MJ 567.

We granted review on two issues:

I

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION TO DISMISS SPECIFICATION 5 OF CHARGE III (OBSTRUCTION OF JUSTICE) FOR FAILURE TO STATE AN OFFENSE IN THAT SAID SPECIFICATION FAILS TO ALLEGE ANY ATTEMPT TO INFLUENCE ANY MILITARY INVESTIGATION OR PROCEEDING.

II

WHETHER APPELLANT'S PLEAS TO SPECIFICATION 1 OF ADDITIONAL CHARGE III (SODOMY WITH A CHILD) AND ADDITIONAL CHARGE IV AND ITS SPECIFICATION (INDECENT LIBERTIES) ARE IMPROVIDENT BECAUSE THE STIPULATION OF FACT ESTABLISHED THAT THE STATUTE OF LIMITATIONS BARRED PROSECUTION OF THE OFFENSES.

We resolve both these questions in the Government's favor.

ISSUE I

The Court below summarized the facts concerning the first granted issue as follows:

Appellant was charged with sexually abusing his two daughters. One of the victims, 17–year–old Tracy, was dating Private B. When appellant discovered that Tracy and Private B planned to marry, he requested Private B's chain of command to assist him in stopping the talk about marriage. Essentially, this resulted in the termination of the relationship between Tracy and Private B. The appellant then contacted Private B and told him that he would consent to the marriage of his daughter if Private B would convince Tracy to change her testimony at appellant's preliminary hearing in a Tennessee State Court.

32 MJ at 568.

At trial specification 5 of Charge III was alleged against appellant as follows:

SPECIFICATION 5: In that [appellant] did, at or near Clarksville, Tennessee, on or about 20 September 1989, wrongfully endeavor to impede a preliminary hearing in the Montgomery County, Tennessee, General Sessions Court and "alter or" influence the testimony of Tracy Smith "and Erica Smith" as a witness before a preliminary hearing in the case of *Tennessee v. Smith*, by promising to

---

1. The opinion below states that "the convening authority ... suspended ... total forfeitures in excess of eight years...." 32 MJ 567, 568. However, the action suspended "total forfeitures for a period of eight years...." Yet, the pretrial agreement provided for suspension of "any forfeitures...."

give parental consent for Jimmie Gale Boozer, Jr. to marry his daughter, Tracy Smith, who was at the time under the age of 18, if the said Jimmie Gale Boozer, Jr. would contact his daughter, Tracy Smith, "and convince her to change her testimony at the preliminary hearing, scheduled for 21 September 1989."

(Quotation marks enclose language excepted in findings.)

- - -

Appellant asserts that the military judge erred by denying trial defense counsel's motion to dismiss specification 5 of Charge III for its failure to state an offense. Relying on our case law, he initially contends that the military offense of obstruction of justice extends only to military proceedings. He argues that the Manual's description of this offense, which does not expressly recognize this limitation, is overbroad. *See* para. 96, Part IV, Manual for Courts–Martial, United States, 1984.[2] Alternatively, he argues that this specification is inadequate even under the broader Manual explanation of this offense. He notes that it does not allege that he violated any Federal criminal statute or impeded any criminal investigation by the United States Government. *Id.*

To decide this question, we must first review our judicial decisions concerning this offense. Since the Court's early days, we have recognized that witness tampering constituted a disorder offense under Article 134 even if it could not be charged as an assimilated crime under Article 134's third clause. In *United States v. Long*, 2 USCMA 60, 65, 6 CMR 60, 65 (1952), a soldier was convicted of committing an assault and battery on a court-martial witness in violation of a civilian witness-tampering statute found in the United States Code. She challenged her conviction on the basis that the above statute did not protect witnesses testifying before courts-martial. However, we found that the alleged conduct violated Article 134's disorder clause even if the Federal statute was inapplicable. *Id.* at 65–66, 6 CMR at 65–66.

*United States v. Jones*, 20 MJ 38 (CMA 1985), presented a related problem. In that case, the accused was found guilty of obstruction of justice under Article 134 for flushing heroin down a toilet during a health-and-welfare inspection conducted by military authorities. He challenged his conviction on the basis that such conduct did not obstruct a pending judicial proceeding. We concluded that the servicemember's intentional destruction of discoverable evidence which could have been used by military authorities in instigating a military prosecution or investigation constituted a service disorder and affirmed. *Id.* at 39–40.

*United States v. Guerrero*, 28 MJ 223 (CMA 1989), presented a somewhat different question. In that case a soldier was

**2.** 96. Article 134 (Obstructing justice)
- a. *Text. See* paragraph 60.
- b. *Elements.*
  (1) That the accused wrongfully did a certain act;
  (2) That the accused did so in the case of a certain person against whom the accused had reason to believe there were or would be criminal proceedings pending;
  (3) That the act was done with the intent to influence, impede, or otherwise obstruct the due administration of justice; and
  (4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
- c. *Explanation.* This offense may be based on conduct that occurred before preferral of charges. Actual obstruction of justice is not an element of this offense. For purposes of this paragraph "criminal proceedings" includes nonjudicial punishment proceedings under Part V of this Manual. Examples of obstruction of justice include wrongfully influencing, intimidating, impeding, or injuring a witness, a person acting on charges under this chapter, an investigating officer under RCM 406, or a party; and by means of bribery, intimidation, misrepresentation, or force or threat of force *delaying or preventing communication of information relating to a violation of any criminal statute of the United States to a person authorized by a department, agency, or armed force of the United States to conduct or engage in investigations or prosecutions of such offenses; or endeavoring to do so. See also* paragraph 22 and Article 37. (Emphasis added.)

convicted of two specifications of obstructing justice for simultaneously asking two soldiers to give false information to future military police investigators. The defense maintained that these specifications were multiplicious for findings. As the elements of obstruction of justice were not set forth expressly in Article 134, we examined the history of this military offense to discern Congress' will. We comparatively noted that its overriding concern was not the protection of individual witnesses but "the administration of justice in the military system." *Id.* at 227, quoting *United States v. Long, supra* 2 USCMA at 65, 6 CMR at 65. Accordingly, we affirmed a single consolidated specification.

Based on these decisions, appellant argues that his alleged conduct of interferring with a state court proceeding could not constitute the military offense of obstruction of justice. This contention, however, is not well taken. In *United States v. Choate*, 32 MJ 423 (CMA 1991), we confronted a similar argument. There, a soldier argued that he had not technically committed the military offense of indecent exposure because he had exposed only his buttocks to a fellow soldier's wife. After examining the specification and the record, we concluded that appellant had been found guilty of "an offense akin to abusing a female on post or communicating indecent language to a female, which have long existed as disorder offenses under military law." *Id.* at 426 (citations omitted). Thus, the recognized impact of the servicemember's conduct on the military and its mission, not its technical characterization, is the touchstone for applying Article 134. *Id.* at 426; *see Parker v. Levy*, 417 U.S. 733, 753–54, 94 S.Ct. 2547, 2560–61, 41 L.Ed.2d 439 (1974); *United States v. Kick*, 7 MJ 82, 85 (CMA 1979); *United States v. Manos*, 8 USCMA 734, 736, 25 CMR 238, 240 (1958).

■ Turning to the present case, we note that appellant was charged with pressuring a fellow soldier at his duty station to convince his girlfriend to change her testimony for a state court proceeding.

The purpose of the proceeding was to conduct a preliminary hearing on previous sexual-abuse allegations made by appellant's daughter against him. The alleged sexual abuse, however, had already been reported to military authorities at the time of the alleged obstruction activity. Moreover, a formal military investigation of this sexual abuse began shortly after the scheduled civilian hearing was waived. Finally, he was subsequently tried for these sexual offenses by military authorities. Thus, like *Jones* and *Guerrero*, it can be said that the impact of the charged conduct on a later, but nonetheless probable, military investigation brought it within the intended scope of Article 134.

■ We also note that appellant's alternative argument is untenable in light of the above conclusion. Essentially, he contends that the specification did not state a military offense because he was not charged with trying to prevent a violation of Federal law from being reported to an agent of the United States. His source for this requirement is the Manual's explanation of the offense of obstruction of justice. *See generally* para. 96(c), Part IV. However, since this is a question of the scope of a substantive criminal offense, it is the will of Congress as discerned by this Court, rather than the Manual, which controls. Accordingly, regardless of the purported Manual strictures, appellant's conviction may stand. *United States v. Choate, supra.*

## ISSUE II

Appellant also attacks several of his guilty-plea convictions on the basis of the statute of limitations in Article 43 of the Uniform Code of Military Justice, 10 USC § 843 (1986): Specification 1, Additional Charge III (sodomy under Article 125) and the specification of Additional Charge IV (taking indecent liberties with a child under 16) both alleged conduct between November 14, 1986, and February 1, 1987. In light of the 5–year statute of limitations, the parties agree that appellant could not have been found guilty of this conduct if it

had occurred before November 14, 1986, the effective date of the longer period of limitation. Pub.L. No. 99–661, § 805(c), 100 Stat. 3908 (1986). In both his supplement to the petition and his final brief, appellate defense counsel makes the following averment:

> Prosecution Exhibit 1, the stipulation of fact, relates that, "[d]uring the middle of September, 1986, appellant committed sodomy with Erica at Fort Polk, Louisiana" (Pros. Exh. 1 at 1).

Supplement at 6; final brief at 6.[3] Appellant thus argues that the stipulation showed that he had sodomized his daughter before November 14, 1986, so his guilty pleas to this offense were improvident.

However, examination of prosecution exhibit 1 suggests that appellate counsel's assertion is not accurate. That exhibit states:

> During the middle of September, 1986, the accused and his family were stationed to Fort Polk, Louisiana. At that time, the accused's current wife and stepmother to the accused's children *left* Fort Polk, Louisiana to travel to New York in order to accompany her sister back to the family home *for Christmas. While gone,* Erica, then 11 years old, asked her Daddy, the accused, if it would be alright if she slept in Mommy and Daddy's bed. . . .
>
> [Then she related that appellant caused her to commit an act of sodomy on him.]

(Emphasis added.) This statement does not unequivocally assert that appellant sodomized his daughter in September 1986. Rather, it implies that the act took place sometime between appellant's wife's departure in the middle of September and her return to her family home for the Christmas holiday.

In addition, two statements from Erica were attached to the stipulation as part of the same prosecution exhibit. The first statement, which was dated 14/11/89, began:

---

Neither the final defense brief nor the supplement to the petition contains a closing quotation mark indicating the extent of the quotation

> I am making this statement about what my father, James SMITH, has done to me. I guess it started at Ft Polk, LA around OCT of 87. My mother had went to pick up a cousin and my sister and I stayed with my father at Ft Polk. During the time that my mother was gone my father touched me twice and also touched my sister. . . .

However, a second statement, which was dated 17 Nov 89, made clear that she was sodomized after November 16, 1986:

> This statement is to clarify my previous statement concerning the sexual abuse by my father. I [sic] late Nov or the first of Dec 86, while at Fort Polk, LA my mom had gone to NY to pick up my cousin to bring her back for Christmas. One night I went into my dad's bedroom and asked him if I could sleep with him. . . .

Finally, while appellant said that he could not "remember the exact date" when he committed the offense, he testified under oath during the providence inquiry as follows:

> MJ [sic]: Sometime between 1 June '89 and 21 August '89 while stationed at Fort Campbell I had sexual intercourse with Tracy and I knew that she wouldn't say no because I was her father. And sometime between 14 November 1986 and 1 February 1987 while stationed at Fort Polk I placed my penis in Erica's mouth. Erica at the time was under the age of sixteen.
>
> MJ: Okay.
>
> ACC: Sometime between 1 May of '87 and 8 August '87 while stationed at Fort Polk I placed my penis in Tracy's mouth, and she was under the age of sixteen at the time. And sometime between 14 November '86 and 1 February '87 I French kissed Erica by putting my tongue inside of her mouth. At the time she was under the age of sixteen.

drawn from the stipulation of fact and, as such, it is somewhat misleading.

■ An accused need not introduce independent evidence supporting his guilty pleas, although they cannot be accepted if they are inconsistent with his providence-inquiry responses. *United States v. Chambers*, 12 MJ 443, 444 (CMA 1982); *United States v. Davenport*, 9 MJ 364, 366–67 (CMA 1980). In appellant's case, the record in its entirety showed that the charged crimes of sodomy and taking indecent liberties took place after November 14, 1986. While it is true that Erica's first statement might be considered inconsistent with appellant's guilty pleas, it was later reconciled by her second statement. *See United States v. McCline*, 32 MJ 356, 358 (CMA 1991). Since the record as a whole is consistent with appellant's pleas, his convictions must stand. *Cf. United States v. Moore*, 32 MJ 170 (CMA 1991).

### III

One further matter requires our consideration. Although not raised by counsel, we note that there is a factual error in the decision below which requires remedial action. In his recitation of the facts, Senior Judge DeGiulio includes the following sentence which we quoted earlier in this opinion:

> The appellant then contacted Private B and told him that he would consent to the marriage of his daughter if Private B would *convince Tracy to change her testimony at appellant's preliminary hearing in a Tennessee State Court.*

32 MJ at 568 (emphasis added). Judge DeGiulio later stated as a fact that "appellant acted to use his daughter's boyfriend, a soldier, and a promise to consent to the marriage of his minor daughter, *in an attempt to change her testimony before a state court.*" 32 MJ at 569 (emphasis added). The specification as referred to trial substantially contained the former italicized language set out above. Moreover, this version was in effect when the military judge denied the motion to dismiss for fail-

ure to state an offense. (R. 48) However, in his findings, the military judge excepted the language in the specification which dealt with the italicized language and made no substitutions.[4] He also found appellant not guilty of the excepted language. (R. 136.)

We believe that the United States Army Court of Military Review should reconsider its decision and resolve this matter in light of the facts as found by the military judge. Art. 66(c), UCMJ, 10 USC § 866(c). Then, the court below should give this Court the benefit of its views on whether specification 5 states an offense in light of the absence therefrom of the language which the military judge excepted and whether the evidence remaining after the findings is factually sufficient to sustain the conviction of obstruction of justice. *See United States v. Dotson*, 17 USCMA 352, 354–55, 38 CMR 150, 152–53 (1968).

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review. Thereafter, the record will be returned directly to this Court.

Judges CRAWFORD, GIERKE, and WISS, and Senior Judge EVERETT did not participate.

COX, Judge (concurring):

I write only to distinguish this case from *United States v. Moore*, 32 MJ 170, 173 (CMA 1991). Smith pleaded guilty to charges alleging his criminal conduct occurred within the statute of limitations. As Chief Judge Sullivan makes clear, the record supports those guilty pleas. Thus, unlike the complicated situation in *Moore*, there was no duty to seek a waiver from this appellant because there was nothing to waive. Further, I wish to make clear that efforts to obstruct state criminal proceedings are fully actionable under Article 134,

---

**4.** The excepted language of the specification is noted earlier in the text of this opinion by quotations.

Uniform Code of Military Justice, 10 USC § 934. In this case, the fact that the alleged sexual abuse had been reported to military authorities (or that a formal military investigation was subsequently commenced) was unnecessary to bring appellant's obstruction activities within the ambit of Article 134. In light of *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), there can be no distinction between obstructing federal or military prosecutions on the one hand and obstructing state prosecutions on the other hand, and there are no "strictures" in the Manual for Courts–Martial that purport to so limit the scope of the offense. Para. 96, Part IV, Manual for Courts–Martial, United States, 1984.