UNITED STATES, Appellee

v

CHARLES R. STACKHOUSE, Staff Sergeant, U. S. Air Force, Appellant

16 USCMA 479, 37 CMR 99

*Jack McManus, Esquire*, argued the cause for Appellant, Accused. With him on the brief were *Marshall B. Segal, Esquire, Colonel Joseph Buchta, Lieutenant Colonel Carl R. Abrams*, and *Lieutenant Colonel Robert S. Amery*.

*Lieutenant Colonel Thomas J. Connolly* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

## Opinion of the Court

FERGUSON, Judge:

The accused stands convicted of three specifications of willful and wrongful indecent exposure, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, and sentenced to a bad-conduct discharge. He challenges the propriety of the findings of guilty on the basis of the legal insufficiency of the evidence, as well as the correctness of the president's instructions on the offenses charged. In view of our disposition of the case, we need only consider the issue of legal sufficiency.

The accused, together with his family, occupied an apartment in Sun Prairie, Wisconsin. He lived on the first floor, near an entry way to the building. On October 29, 1965, Mrs. James Lockwood, who occupied an upstairs apartment, was "coming in from outside after emptying trash," and noticed the Stackhouse apartment door was "partially open." She "glanced in . . . just for a second" and saw the accused standing therein, completely nude. He made no move to turn away, but she could not say whether he was looking toward her. He was standing three or four feet from the bathroom "In the little hallway leading in the bathroom, bedrooms and kitchen."

On November 1, 1965, Mr. Lockwood, the previous witness' husband, also saw the accused standing nude in his apartment. Mr. Lockwood was returning to work from lunch, and accused's door was open "About a foot and a half, maybe." He "could not really

say" whether any portion of accused's anatomy was covered, and was unsure whether the accused saw him.

Mrs. Constance L. Kasuboske, residing on the first floor of the building, likewise observed the accused in the nude on November 4, 1965. She was taking out the trash and, on returning, "the door to his apartment was open and I could see right through into the bathroom and the bathroom light was on and he stood in the bathroom with no clothes on." Mrs. Kasuboske "looked straight in," as the door was open "About three or three and a half feet." She saw him for "Not more than two or three seconds—just to walk by and look in and walk on." Accused was "Maybe 30 feet" away. Mrs. Kasuboske could not say whether the accused saw her.

In none of the incidents does it appear that accused made any motions, gestures, spoke, or otherwise indicated he was aware of the presence of the passersby in the hallway, or sought in any manner to attract their attention.

Sergeant Stackhouse, testifying in his own behalf, denied any intent to expose himself. He admitted being occasionally nude in his apartment, as well as the possibility he might have been observed by his neighbors. A heating problem existed, and the apartment door was sometimes left open in order to create a draft. At other times, children playing in the hallway would push it partially open. The door was always left unlocked, as accused's daughter was upstairs with the babysitter. Accused did not see

any of the witnesses observing him, and would not have been nude had he realized the door was ajar.

We think the foregoing clearly insufficient to establish a willful indecent exposure on the accused's part. Undoubtedly, he may have been heedless in walking about his quarters in the nude without first insuring the door was fully closed and the sensitivity of his neighbors protected. But negligence is not a sufficient basis for a conviction of the depraved misconduct here charged. As the Chief Judge declared, in United States v Manos, 8 USCMA 734, 25 CMR 238, at page 736:

". . . In our opinion, negligent exposure is not punishable as a violation of the Uniform Code."

In Hearn v District of Columbia, 178 A2d 434, 94 ALR2d 1348 (Mun App DC) (1962), the accused was observed on two occasions through the window of his hotel room, which fronted on an alley. The window was open, and the blinds were raised. Accused was standing in front of the window nude, bobbing up and down, and would occasionally lean out in such a manner that his privates were displayed. In holding the evidence insufficient to establish guilt of willful indecent exposure, the court said, at page 437:

". . . The required criminal intent is usually established by some action by which a defendant draws attention to his exposed condition or by a display in a place so public that it must be presumed it was intended to be seen by others. However, the defendant must be aware of all those facts which make his conduct criminal. Nudity is not per se 'obscene.' It is not illegal for a man to be completely unclothed in his room. It becomes so only if he intentionally exposes himself to other persons.

"A fair factual comparison of the many recorded cases involving convictions for similar offenses in this and other jurisdictions reveals that although each involved an actual exposure, there was also shown a deliberate intention by each defendant to attract outside attention to his nudity. In each instance the defendant did something to call attention to his nakedness. Such conduct was not observed in the present case where there was no design or action by defendant to attract attention to his undressed condition in his own room in the hotel. In the cited cases it was the public that was annoyed or embarrassed by the exhibition of nudeness purposely brought to their attention, while here it is rather significant that the only persons who saw appellant at the window of his room (other than the room clerk who was specially called out to observe) were the police officers who were trying to see him. Although the two officers testified that a number of persons were traversing the alley on the nights in question, there was no testimony that any of these persons paused to observe the figure in room 213.

"Intent to commit an act similar to that with which appellant is here charged can be shown by some action by which attention is drawn to the exposed condition or by a display in a place so public that it must be presumed that it was intended to be seen by others. In the present case, appellant made no noises, no sounds, no gestures, no signals in any way for the purpose of attracting attention to his nudity. That he 'bobbed up and down' is consistent with his statement concerning movements in the narrow hotel bedroom to the dresser to make notes and in bending to read the newspaper on the floor. There was no testimony by any witness denying that there was a notebook on the dresser or a newspaper spread upon the floor. Neither is there any evidence that appellant made any effort to attract attention to himself. Certainly the exposures described by the police officers do not equate with the conduct in those cases in which the defendants were found guilty. Their exposures were palpably 'intentional' while appellant's were 'accidental.' "

In Selph v District of Columbia, 188 A2d 344 (Mun App DC) (1963), the

court likewise held the evidence insufficient to establish a willful indecent exposure where the complainant twice saw accused standing nude in his apartment by looking in his window as she walked by. It declared, at page 345:

"Before a conviction for indecent exposure can be upheld, it must be shown that the exposure was intentional, not accidental. *Ordinary acts involving exposure as a result of carelessness or thoughtlessness, particularly when such acts take place within the privacy of one's home, do not in themselves establish the offense of indecent exposure.*" [Emphasis supplied.]

State v Peery, 224 Minn 346, 28 NW 2d 851 (1947), involved facts similar to those presented in this record. There, accused occupied a corner room facing on a public sidewalk, with two windows through which the interior was plainly visible to passersby. On several occasions, witnesses saw him standing in the room nude. The accused denied any intent to expose himself. The court found the evidence insufficient to support findings of guilty of willful indecent exposure and said, at page 854:

"To establish intent where the act does not occur in a public place or otherwise where it is certain to be observed, *some evidence further than the act itself must be presented. Ordinarily, intent is established by evidence of motions, signals, sounds, or other actions by the accused designed to attract attention to his exposed condition, or by his display in a place so public and open that it must be reasonably presumed that it was intended to be witnessed.*" [Emphasis supplied.]

See also cases collected in Annotations, 93 ALR 996 and 94 ALR2d 1353, 1358; People v Ulman, 258 App Div 262, 16 NYS2d 222 (1939); and Case v Commonwealth, 313 Ky 374, 231 SW 2d 86 (1950).

Turning to the record before us, we find nothing more than observation of the nude accused on three occasions by looking in the partially open door of his apartment. He made no gestures, spoke no words, and in no way attempted to attract attention to himself. In short, there is nothing shown here but observed nudity in the accused's own living quarters and, as the cited authorities demonstrate, such is an insufficient basis on which to predicate a charge of willful indecent exposure. Hearn v District of Columbia; Selph v District of Columbia; State v Peery, all supra. As was said in State v Martin, 125 Iowa 715, 101 NW 637 (1904), at page 638:

". . . It does not follow . . . that one who uncovers his person in the privacy of his own apartment, or other place where there is no reason to suppose that his act may offend the sensibilities of others, is guilty of a crime."

The necessary ingredient to make such conduct a criminal act is willfulness—the intention that others observe one dressed "in nothing more substantial than the innocence of Eden." State v Martin, supra, at page 638. And that is not to be inferred from observation alone. Hearn v District of Columbia, supra; State v Peery, supra. The Government, however, finds a basis for the inference in the fact that the incidents occurred on three separate occasions. It has not, however, called authorities to our attention which would support such a conclusion, nor do we think it a proper one to draw. A door may be left partially open on more than one occasion, and the evidence relating thereto is at least as consistent with neglect as it is with purposeful action. United States v Manos, supra.

Moreover, not one person involved, though each was acquainted with the accused, brought the matter to his attention or admonished him to close his door. The first information he received was upon the initiation of a formal criminal investigation some time later. Indeed, charges were not even filed in the case until approximately ninety days after the incidents allegedly occurred. Hence, there is no showing he persisted in his exposure after being admonished of his neighbors' outrage or any other evidentiary

foundation for an inference of intentional misbehavior. In light of such failure of proof, his conviction cannot stand.

The findings of guilty are set aside. The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force. The charges are ordered dismissed.

Chief Judge QUINN and Judge KILDAY concur.