UNITED STATES, Appellee

v

NORMAN E. CAUNE, Specialist Four, U. S. Army, Appellant

22 USCMA 200, 46 CMR 200

No. 26,208

March 23, 1973

*Captain Thomas Barry Kingham* argued the cause for Appellant, Accused. With him on the brief was *Colonel Arnold I. Melnick.*

*Captain Merle F. Wilberding* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III,* and *Captain Richard L. Menson.*

## Opinion of the Court

DARDEN, Chief Judge:

Our concern in this case is with whether the evidence is sufficient in law to sustain the accused's conviction of indecent exposure, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.

On April 1, 1971, the accused appeared at his duty station in civilian clothes. He announced that he was through with the Army and did not think that he would be a soldier anymore. Specialist Caune's persistence in this behavior led to counseling by the Headquarters Commandant, Lieutenant Colonel S. T. Lovelace, who ultimately persuaded him to visit a psychiatric clinic on the following morning.

On the morning of April 2, the accused telephoned Lieutenant Colonel Lovelace from the clinic. He seemed to be upset and stated that he did not want to fill out papers or sign his name as the clinic wished him to do. Lovelace arranged for the accused to come to his office. The accused was subsequently interviewed by the Deputy Chief of Staff, and Lieutenant Colonel Lovelace once more counseled him, vainly pointing out that it was not possible for one unilaterally to terminate his military obligation.

After the accused remained adamant, Lieutenant Colonel Lovelace summoned Captain Jacobson, the accused's immediate commander. Jacobson ordered the accused to leave Lieutenant Colonel Lovelace's office, get in uniform, and report for duty. When the accused refused to obey the order, a confinement order was prepared and military police were summoned to take the accused to the stockade. In the meantime, the accused remained in the outer office of Lieutenant Colonel Lovelace's two-room suite.

The military police took the accused into custody and searched him. After the search was completed, the accused stepped away from the wall and quickly removed his clothing. He handed his shirt to one of the policemen and asked if he wanted to search it. He also remarked, " 'If you want to do it, do it right,' " and on being ordered to put his clothes on, inquired if they were ashamed of the human body.

The accused remained nude until he was forcibly redressed. However, he made no obscene or indecent gestures or remarks. No females were present and the outer office door was quickly closed and guarded to prevent entrance by others. The accused was observed while nude by Lieutenant Colonel Lovelace, Major McKeithan, Captain Jacobson, the military policemen, and an enlisted man who worked in the office.

 The accused's conduct in removing his clothing may have been contemptuous and disrespectful and punishable as a violation of the Uniform Code of Military Justice. Under the circumstances of this case, however, such conduct does not constitute the offense of indecent exposure. Nudity per se is not indecent. United States v Stackhouse, 16 USCMA 479, 37 CMR 99 (1967); Manual Enterprises, Inc. v Day, 370 US 478, 8 L Ed 2d 639, 82 S Ct 1432 (1962). Something more is required than observation of the accused in the nude, United States v Manos, 8 USCMA 734, 25 CMR 238 (1958), and that additional factor is found in the requirement that the exposure be of an indecent nature.

Like obscenity, indecency is a word that eludes a clear, simple definition conveying a generally accepted meaning. Although we have difficulty in defining what indecency is, we believe we know what it is not. See Jacobellis v Ohio, 378 US 184, 197, 12 L Ed 2d 793, 84 S Ct 1676 (1964) (Stewart, J., concurring).

Cases of indecent exposure before this Court have generally involved exposure of the accused's person to women or children or under circumstances indicating a desire of the accused to exhibit his genitalia to public view. United States v Stackhouse, supra; United States v Conrad, 15 USCMA 439, 35 CMR 411 (1965); United States v Manos, supra; United States v Brown, 3 USCMA 454, 13 CMR 10 (1953); United States v Schumacher, 2 USCMA 134, 7 CMR 10 (1953). The charge has never been extended to one who undresses in front of other male adults in the semiprivacy of a military office. The reason is clear. As we have noted, nudity alone is not indecent, and there is nothing lewd or morally offensive in the presence of an unclothed male among others of the same sex. Were the opposite true, members of the armed forces living in barracks or aboard ships would be vulnerable to charges as a result of their necessarily sharing sanitary facilities. The aspect of the accused's behavior that is censurable was not its allegedly indecent character but the disrespect and contempt it exhibited for his military superiors and Army discipline in general. As

we have stated, what the accused did may have been punishable misconduct but it was not punishable in the form charged here.

We have considered the many state cases on which the Government relies to sustain its contention that the evidence is sufficient to support the findings of guilty and those on which appellate defense counsel rely as support for the opposite conclusion. *Compare* State v Nelson, 178 NW2d 434 (Iowa 1970), *with* Breeding v Commonwealth, 192 SE2d 807 (Va 1972). But these authorities depend upon the terms of particular statutes that "require different elements, and . . . prevent a pattern from emerging." United States v Manos, supra at 736–737, 25 CMR at 240–241 (separate opinion). They are of little value when applied to the peculiar circumstances confronting us in this case. We conclude therefore that the evidence is insufficient to sustain the findings of guilty of indecent exposure.

The findings of guilty of Charge II and its specification are set aside and Charge II is ordered dismissed. The decision of the United States Army Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Army. The court may reassess the sentence on the remaining findings of guilty.

Judges QUINN and DUNCAN concur.