UNITED STATES, Appellee

v.

Lynn A. SHAFFER, Electronics
Technician Chief, U.S.
Navy, Appellant.

No. 96–0229.
Crim.App. No. 94–1137.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 5, 1996.

Decided May 15, 1997.

For Appellant: *Mary T. Hall* (argued); *Lieutenant Steven B. Fillman*, JAGC, USNR.

For Appellee: *Lieutenant David M. Harrison*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC (on brief).

## Opinion of the Court

COX, Chief Judge:

In June and July of 1993, appellant was tried by a special court-martial composed of officer and enlisted members sitting at Naval Submarine Base, Kings Bay, Georgia. Contrary to his pleas, he was convicted of indecent exposure (2 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The members sentenced appellant to a bad-conduct discharge and reduction to E–5. The convening authority approved the sentence.

In an unpublished opinion, the Court of Criminal Appeals dismissed specification 1 of the Charge, but affirmed the findings of guilty to specification 2 of the Charge,[1] and affirmed the sentence. We granted review of the following questions of law:

### I

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN CONCLUDING THAT THE EVIDENCE UNDER SPECIFICATION 2 WAS SUFFICIENT, AS A MATTER OF LAW, TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT.

### II

WHETHER THE LOWER COURT ERRED IN FINDING THAT THE RECORD DID NOT SUPPORT THE ERROR ASSIGNED BELOW THAT THE MILITARY JUDGE VIOLATED APPELLANT'S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT WHEN HE REFUSED TO LET THE TRIAL DEFENSE COUNSEL CROSS–EXAMINE JENNIFER SHIELDS AS TO THE IMPACT OF JAMES SHIELDS' COURT–MARTIAL ON HER MOTIVE TO LIE OR HER ABILITY TO ACCURATELY RECALL EVENTS.

We hold that the evidence is legally sufficient to support the findings of guilty to specification 2. We also hold that, on this record, the military judge did not violate appellant's Sixth Amendment right of confrontation.

### SUFFICIENCY OF THE EVIDENCE

While the Courts of Criminal Appeals review courts-martial for both legal and factual sufficiency, this Court reviews only for legal sufficiency. *Compare* Art. 66(c) *with* Art. 67(c), UCMJ, 10 USC §§ 866(c) and 867(c)(1994), respectively. The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could

---

1. Specification 2 states that appellant "did, at Kingsland, Georgia, on diverse occasions from about May through December 1992, while standing in or near an open garage at ... [his resi- dence], willfully and wrongfully expose in an indecent manner to public view his buttocks and penis."

have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 MJ 324 (CMA 1987), citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ In this regard, the record reveals the following evidence adduced by the Government with respect to specification 2: Three witnesses (Ms. Cristina Schuck, Ms. Lin Wolfe, and Mrs. Nancy Shields) testified that, while driving by appellant's home on an afternoon in 1992, each saw appellant standing completely naked in the back of his garage. The garage door was open; appellant was facing the street; and he was looking in the witness' direction. He did not cover his groin or otherwise attempt to remove himself from view on any of these occasions. This happened a total of four separate times (once in May or June; once in June; and twice in November).

Mrs. Shields said she observed appellant's actions in November. Jennifer Shields, Mrs. Shields' daughter (10 years old at the time of trial), testified that, in October of 1992 and again "around Christmas" in 1992, she saw appellant naked. One time, he was standing in his open garage and facing the street. The other time, he was standing outside the garage. According to Jennifer, "[H]e was standing with the fence door wide open and in between the gate of the fence looking out at the street." Another of Mrs. Shields' daughters, Rhianna (9 years old at the time of trial), testified that she saw appellant naked on three separate occasions during the same time frame. Each time, he was standing and facing the street through his open garage. One time, he said "Hi" to Rhianna as she walked by.

Appellant argues that this evidence is legally insufficient to support his conviction for indecent exposure. Specifically, he argues that the evidence fails to establish that his exposures were willful. We disagree.

The offense of indecent exposure requires proof of the following three elements:

(1) That the accused exposed a certain part of the accused's body to public view in an indecent manner;

(2) That the exposure was willful and wrongful; and

(3) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 88b, Part IV, Manual for Courts–Martial, United States (1995 ed.).

"Willful" means "an intentional exposure to public view," while "indecent" signifies "that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." Paras. 88c and 90c, Part IV.

In *United States v. Choate,* 32 MJ 423, 425 n. 3 (1991), we observed that "[o]ur decisions addressing prosecutions for indecent exposure have generally relied on the state court decisions representing the majority approach to this crime." Those decisions make it clear that the required criminal intent for indecent exposure "is usually established by some action by which a defendant draws attention to his exposed condition or by a display in a place so public that it must be presumed it was intended to be seen by others." *United States v. Stackhouse,* 16 USCMA 479, 481, 37 CMR 99, 101, quoting *Hearn v. District of Columbia,* 178 A.2d 434, 437 (D.C.Mun.App. 1962).

Quoting *State v. Peery,* 224 Minn. 346, 28 N.W.2d 851, 854 (1947), we also noted in *Stackhouse* the following:

> To establish intent where the act does not occur in a public place or otherwise where it is certain to be observed, some evidence further than the act itself must be presented. Ordinarily, intent is established by evidence of motions, signals, sounds, or other actions by the accused designed to attract attention to his exposed condition, or by his display in a place so public and open that it must be reasonably presumed that it was intended to be witnessed.

16 USCMA at 482, 37 CMR at 102.

[4] As is readily apparent from the quoted cases, the fact that appellant's exposures

took place in and on his private property is of no particular moment. The offense of indecent exposure does not just apply to exposures that take place on traditionally public lands or in traditionally public buildings. The offense also applies to indecent exposures that occur in places "so public and open," including privately-owned homes, that they are "certain to be observed" by the general population. *See State v. Whitaker*, 164 Ariz. 359, 793 P.2d 116, 119–20 (App. 1990) (public-indecency statute's proscriptions can be committed in one's own home); *State v. Chiles*, 53 Wash.App. 452, 767 P.2d 597 (1989) (room with unveiled window on second floor of defendant's home was "public place" within meaning of public-indecency statute); *Collins v. State*, 160 Ga.App. 680, 288 S.E.2d 43 (1981) (public-indecency conviction upheld where defendant sunbathed in the nude on his back porch); *cf. State v. Romero*, 103 N.M. 532, 710 P.2d 99 (App. 1985) (indecent-exposure conviction reversed where conduct occurred in defendant's home but was not subject to view by persons outside the home).

In this case, evidence was adduced showing that appellant exposed himself while standing in his open garage (or next to his fence). The garage was attached to his home, faced the street, was large enough to hold two cars, and was located in a well-developed, residential community. School buses and automobiles drove by on a regular basis, and children routinely passed by on foot and on their bicycles. Other families' homes were located directly alongside of and across the street from appellant's home. From these facts, the panel could reasonably conclude that appellant's exposures took place in "public view." *See* para. 88b(1), Part IV.

Further, on each of these occasions, appellant was described as facing out of his open garage, towards the street, in unobstructed view, during daytime-lighted hours. Each time, he just stood there, naked. He never covered himself up or removed himself from view when seen. From these facts, the panel could reasonably conclude that appellant knew the garage was open and knew he could be seen by others. He was not, for example, merely reaching to place something on a shelf, as he had been during the January 1993 incident charged as specification 1. Consequently, the panel could also reasonably conclude that, on each occasion, appellant was in the garage, or near it, for the sole purpose of exposing himself to the public.

Thus, we hold that the evidence is legally sufficient to support the panel's conclusion that appellant's exposures were "willful" and "wrongful." *See* para. 88b(2), Part IV; *see also* 50 Am.Jur.2d, Lewdness, Indecency, and Obscenity § 17 at 291 (1995) ("Statutes have generally adopted the common-law requirements of the offense of indecent exposure; to convict someone of indecent exposure, there must be shown a wilful and intentional exposure of the private parts of the body."); *Dill v. State*, 24 Md.App. 695, 332 A.2d 690, 693 (1975) ("[A]t the common law indecent exposure was the wilful and intentional exposure of the private parts of one's body in a public place . . . ."); *compare Duvallon v. District of Columbia*, 515 A.2d 724 (D.C.1986) (intentional exposure of the buttocks held not to be indecent because not an exposure of the genitals), *with United States v. Choate, supra* (exposure of buttocks held indecent under the circumstances under Article 134).

The same apparently cannot be said about the incident charged in specification 1. Although we do not review the sufficiency of the evidence associated with specification 1, we note that, in dismissing that specification, the court below found the following:

> At most, the evidence only shows a brief, accidental, innocent exposure. We have no reason to doubt the testimony of the two girls. Evidence from those two witnesses does nothing more than support the testimony of the appellant that he stepped briefly into his garage to put magazines on a shelf and that he was unaware that the garage door was open or that anyone could see him.

Unpub. op. at 3; *accord United States v. Stackhouse, supra*. We conclude that the evidence supporting specification 2 of the Charge, however, is legally sufficient, so the

first granted issue is answered in the negative.

### RIGHT OF CONFRONTATION

■ The second granted issue concerns civilian defense counsel's attempt to interject into the record evidence that Jennifer Shields' father (Nancy Shields' husband) was court-martialed for engaging in sex-related offenses with his adopted daughter.[2] The military judge prohibited civilian defense counsel from doing so, and appellant labels this a violation of his right of confrontation. We disagree.

■ Error may not be predicated upon a ruling that excludes evidence unless "the substance of the evidence was made known to the military judge by offer or was apparent from the context within which questions were asked." Mil.R.Evid. 103(a)(2), Manual, supra. "An offer of proof allows the military judge to make an informed ruling and permits the appellate courts to review that ruling to determine whether exclusion of the evidence resulted in reversible error." United States v. Means, 24 MJ 160, 162 (CMA 1987). An offer of proof is unnecessary "where the substance and materiality of the excluded evidence are obvious." Id., quoting United States v. Peters, 732 F.2d 1004, 1010 (1st Cir.1984). "When it is not obvious, however, an offer of proof is required to clearly and specifically identify the evidence sought to be admitted and its significance." United States v. Hayes, 36 MJ 361, 363 (CMA 1993), quoting Means, supra at 162–63.

■ We review trial rulings limiting cross-examination for abuse of discretion. United States v. Buenaventura, 45 MJ 72, 79 (1996). In addition to the substance, the relevance of excluded evidence must also be obvious from the record before this Court will find an abuse of discretion in excluding it. See United States v. Means and United States v. Hayes, both supra; see also United States v. Sager, 36 MJ 137, 146 (CMA 1992) (Court will not speculate about "extra-record premise"); United States v. Harrison, 26 MJ

474, 476 (CMA 1988) (Court cannot countenance "post-trial speculation"); see generally Art. 67. Here, neither is obvious.

The subject of Mr. Shields' misconduct or court-martial came up three times during appellant's court-martial. The first time, civilian defense counsel, during his opening statement, started to say:

> In May and June of 1992, when the initial allegations of indecent exposure misconduct was [sic] made against Chief Shaffer, that is the precise time frame that Nancy Shields' husband was charged with——

At that point, trial counsel objected, and the military judge responded, "I am not going to let it in until there is foundation showing relevancy, Mr. Nelms. Please move on to another issue." As directed, civilian defense counsel moved on to another matter; he made no offer of proof or argument regarding the relevance of Mr. Shields' alleged misconduct to appellant's case. Lacking such a proffer, appellant does not here argue that the military judge erred in precluding counsel's reference to Mr. Shields' misconduct at that point.

The second time civilian defense counsel apparently began to broach the subject of Mr. Shields' misconduct or court-martial— and the occasion here in issue—occurred during his cross-examination of Jennifer Shields. Civilian defense counsel asked Jennifer the following questions:

Q. When you lived on Forest Ridge Road, did your mom and dad live with you?

A. Yes.

Q. Does [sic] your mom and dad live with you now?

A. No, just my mom.

Q. When did you move from Georgia to Alabama?

A. In June. I think it was the 12th.

Q. Was your father living with you at that time?

A. No, sir.

2. The promulgating order from that court-martial was not introduced into evidence at appellant's court-martial and is not before us. Conse-

quently, while we assume that Mr. Shields was convicted of sex-related offenses, we do not assume they were similar to appellant's offense.

Q. When was the last time your father lived with you?

A. I don't remember.

Q. It was in September of last year, right?

A. Yes.

Q. This incident——

MJ: Mr. Nelms—do you want to take a little break?

WIT: Yes.

(Emphasis added.) The military judge then recessed the court-martial.

In a session under Article 39(a), UCMJ, 10 USC § 839(a), trial counsel objected on relevance grounds, and he requested

some type of instruction from the judge. I think the defense has pushed the envelope on the relevance of the father.

The military judge agreed, stating:

I was waiting on a government objection. It seems to be a calculated effort to upset the witness and get the witness in emotional turmoil before you turn to the issues at hand. I want it stopped.

Thus for a second time, the military judge clearly notified defense counsel that the relevance, if any, of Mr. Shields' misconduct was not apparent to the court. Defense counsel did not object or otherwise protest, and he did not offer any explanation of such relevance. When proceedings on the merits resumed, counsel moved immediately on to questioning Jennifer about appellant's alleged indecent exposures.

When the subject of Mr. Shields' misconduct came up the third time, it was not even initiated by defense counsel, but by the military judge himself. After Mrs. Shields completed her testimony on direct examination for the prosecution, but before cross-examination, the military judge *sua sponte* convened an Article 39(a) session, where he stated to civilian defense counsel:

I want to preview, before allowing some of this to go before the members. I want to focus on the area you want to get into with regard to psychiatric counseling or whatever. I want to see what we got outside of the members and I will deal with it now.

Whether defense counsel had signaled such an intent or whether the military judge simply decided it was time to force defense counsel to finally make it a matter of record cannot be determined from this record. Counsel's theory, it turns out, was that, due to Mr. Shields' own problems, the Shields family generally received counseling on several occasions. Counsel argued that, in some unspecified way, this

counseling ... tends to show motivation of bias towards Chief Shaffer. During the same time frame of these[,] accusations are being made of Chief Shaffer.

During defense counsel's rambling voir dire of Mrs. Shields, which strayed regularly from the subject of Mr. Shields' difficulties, the military judge interjected:

As I started to say a few minutes ago, I called this session not to preview your entire cross but to review the issue of whether I will allow any testimony whatsoever with respect to any psychiatric counsel or with respect to the details of charges against this lady's husband which events took place in [sic] sometime in '92.

Ultimately, after defense counsel managed only to reiterate the fact that Mrs. Shields had been counseled with respect to her husband's misconduct, the military judge ruled:

The fact that this witness was counseled is, in my view, absolutely irrelevant to the issue that is before the court today. The fact that the children may have had some conversation with the Child Protective Services worker relating to the problems that was [sic] present in their home at that time, or in a preceding time and may be still ongoing during some of the events that transpired here, is again, irrelevant. I don't want any questioning on those issues before the jury. As far as relationships between the family or attitudes or whatever—if there is a basis for bias, you may inquire into it. That is the ruling I have on that.

No error is here asserted with respect to this ruling prohibiting the questioning of Mrs. Shields about her husband's difficulties.

With regard to the issue before this Court—the military judge's supposed limita-

tion of the questioning of Jennifer—it is not obvious that counsel was actually intending to elicit from her testimony about Mr. Shields' misconduct or court-martial. Counsel's words, "This incident——," are ambiguous and may well have referred to one or more of the incidents involving appellant, especially since counsel was on notice that a showing of relevance was prerequisite to questioning about the father and counsel had not undertaken such a showing.

But even if such an intent was obvious, the burden was on the defense, as proponent of the evidence, see *United States v. Shover*, 45 MJ 119, 122–23 (1996), to establish its relevance to an issue in this case. Mil.R.Evid. 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence." Mil.R.Evid. 401. Without a timely proffer, appellant cannot now fairly complain that the judge improperly precluded the questioning.

On appeal, appellant argues that, during cross-examination of Jennifer Shields, counsel was indeed referring to Mr. Shields' problems; that counsel was in fact intending to cross-examine Jennifer about her father's court-martial or misconduct; that the military judge was on notice of how counsel intended to proceed; and that the military judge erred in precluding this examination.

Appellant further argues that evidence of Mr. Shields' misconduct would have shown that the Shields women were lying about appellant. Specifically, he now asserts that they had a motive to lie because of their "resentment and jealousy of [appellant and his] family." He further suggests that the Shields women resented and were jealous of him because the Shields family was tormented and dysfunctional while appellant's family was "all-American" and trouble-free. Finally, he offers that one of the reasons the Shields family was tormented and dysfunctional was because Mr. Shields sexually assaulted his step-daughter. In short, appellant's argument before this Court bears no resemblance whatever to the position advanced at trial—that relevance, in some way,

sprang from the fact of counseling. We can hardly hold the military judge to a standard of prescience.

Appellate embellishment notwithstanding, moreover, we can still discern no abuse of discretion by the military judge concerning his determination that insufficient nexus was shown between appellant's and Mr. Shields' crimes, or between Mr. Shields' crimes and the Shields women's alleged motivation to perjure themselves at the expense of an innocent neighbor. This is especially so where, as here, the judge permitted full cross-examination of the witnesses regarding their attitudes and possible bias against appellant and his family. At its very best, this speculation appellant sought to inject into his trial could have been "only *marginally* relevant to a *possible* argument that defense counsel *might* make concerning a *possible* motive to explain" why the Shields women would lie. *See United States v. Lehman*, 756 F.2d 725, 728 (9th Cir.1985) (emphsis added). The second granted issue is also answered in the negative.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges CRAWFORD, GIERKE, and EFFRON concur.

SULLIVAN, Judge (dissenting):

The majority resolves Issue II on the basis that defense counsel did not articulate why the precluded cross-examination of a prosecution witness (Jennifer Shields) about her father's recent court-martial for child-sexual abuse was relevant. *See* Mil. R. Evid. 401, Manual for Courts–Martial, United States, 1984 (Evidence is relevant when it has "*any tendency* to make the existence *of any fact that is of consequence* to the determination of the action *more probable or less probable.* . . ." (Emphasis added.)), and Mil.R.Evid. 402. In my view, the relevance of the desired cross-examination to show a motive for the testimony of this young witness and of the rest of her family and friends against appellant was obvious. *See* Mil. R. Evid. 103(a)(2) ("[T]he substance of the evidence . . . was apparent from the context within

which the questions were asked."). Moreover, the majority's alternative application of Mil. R. Evid. 401 to approve suppression of this vital defense evidence violates wellestablished civilian and military precedent. *See generally* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 422 (3d ed. 1991) (Mil. R. Evid. 401 favors admission, and "anything that can help rationally decide disputed issues is relevant.").

Finally, the majority suggests that, assuming some relevance of this cross-examination, it was so marginal a matter that no error can be found in its prohibition. *See* Mil. R. Evid. 403. I disagree with this conclusion and would hold that the probative value of the desired cross-examination was substantial. *See United States v. Gray*, 40 MJ 77 (CMA 1994); *State v. Helms*, 322 N.C. 315, 367 S.E.2d 644, 647 (1988); *State v. Schmidt*, 288 S.C. 301, 342 S.E.2d 401, 403 (1986). In my view, significant constitutional error occurred in this case, and evidentiary rhetoric aside, appellant was thereby denied a fair trial. *See Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

Appellant stands convicted of a single specification of indecently exposing himself to neighborhood children and women on divers occasions between May and December 1992. Evidence of his guilt was provided by Mrs. Nancy Shields, her two daughters, Rhiana Shields and Jennifer Shields, and her two friends, Lin Wolfe and Cristina Schuck. Appellant denied having ever been nude in his garage at any time prior to his accidental exposure of January 7, 1993. No two of the government witnesses testified to seeing appellant nude in his garage on the same occasion.

The majority concludes that civilian defense counsel failed to articulate a theory of relevance for cross-examining young Jennifer Shields about her father's conviction for child-sexual abuse. I am not convinced that this conclusion is appropriate in light of the military judge's repeated squelching of this

area of inquiry. *See State v. Schmidt, supra.* Later at this court-martial, defense counsel, at a session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), called prior to cross-examination of her mother, Mrs. Shields, did identify the evidence he sought concerning the former Seaman Shields' conviction. He asked Mrs. Shields the following questions:

ICC [*]: Is it true that Heather was adopted by your husband Seaman James Shields?

WITNESS: Yes.

ICC: And she is 15 years old?

WITNESS: Yes.

ICC: Last May, isn't it true that Heather accused her father of sodomy, indecent acts, incest, and carnal knowledge?

WITNESS: Yes.

ICC: In May of '92?

WITNESS: April.

ICC: In September of '92, isn't it true that he pled guilty to the acts of sodomy, carnal knowledge, and incest with his daughter and was sentenced to five years?

WITNESS: Yes.

ICC: He hasn't been a member of your household since, has he?

WITNESS: No.

The military judge, however, signaled at that time and repeatedly throughout the trial that he was not inclined to allow this evidence to go before the members.

Appellant's defense was that the government witnesses were falsely accusing him of indecently exposing himself and conspiring among themselves to secure his conviction of this offense. To have any chance of succeeding on this theory, he had to show *why* so many people (Mrs. Shields, her two daughters, and her two friends) would perjure themselves. The defense strategy was to introduce the above evidence to show *intense hatred and jealousy* on Mrs. Shields' part towards appellant's family, which *motivated* her to falsely testify against appellant and to lead the others to falsely testify against him. This theory of the defense was clearly articulated in the defense *voir dire* questions of the

* ICC: Individual Civilian Counsel.

members, in defense counsel's opening statement, and in defense counsel's argument to the military judge ("[I]t tends to show motivation of bias toward Chief Shaffer.").

To establish this conspiracy of lies, the defense attempted to proffer some reasons why Mrs. Shields and the others hated and envied appellant's family. The defense's initial approach to this question was to show that Mrs. Shields was a neighbor of appellant who resented Chief Shaffer's success in the Navy and his family's good name in the local Navy community. The defense hoped to establish this fact circumstantially by contrasting Chief Shaffer's outstanding naval success and family reputation with Seaman Shields' court-martial and family disgrace, including counseling by state protective-service officers as a result of Seaman Shields' misconduct. It also attempted to show that the downfall of the Shields' family occurred at approximately the same time that the Shields' complaints against appellant began to surface. Finally, the defense attempted to show that Seaman Shields' court-martial for child-sexual abuse was for sexual offenses generally related to the charges against appellant, *i.e.,* indecent sexual exposure to children.

This was clearly relevant cross-examination into bias and motive to lie on the part of the prosecution's witnesses. *Helms,* 367 S.E.2d at 647 (evidence showing why mother of child-sex victim would suborn perjury in her children relevant in child-abuse case); *Schmidt,* 342 S.E.2d at 403 (evidence showing family vendetta relevant in child-sexual-abuse case); *see generally Gray,* 40 MJ at 81 (error to exclude evidence that prosecution witnesses complained against the accused to draw attention away from their own dysfunctional and abusive family situation). The law is well-settled on this question.

Nevertheless, the military judge repeatedly rebuffed any attempt by the defense to bring the court-martial of Seaman Shields to the attention of the members. Exclusion of this defense-cross-examination evidence deprived appellant of vital support for his attack on Jennifer Shields' credibility and that of the other witnesses in the Shields' camp.

Defense counsel's closing argument made clear the need for this evidence, as follows:

This is a pitiful, tragic case. And our theory, and we believe we've made it clear, the defense, is that poor Nancy Shields, a very competitive figure with five children, she's bitter. She wants to get somebody. And somebody connected to the Navy is more than good enough for her. And she got him. She had to recruit two other women to help her, but she got him.

This family-"vendetta" argument, in my opinion, would have been much more plausible to the members if they had known the reason why Mrs. Shields, her children, and her friends hated the Navy and its leaders, *i.e.,* her husband's court-martial for child-sex abuse. *See State v. Helms* and *State v. Schmidt,* both *supra.* Moreover, appellant's status as a senior enlisted man, a 4.0 sailor, and a well-thought-of Navy family man made his selection as the object of Mrs. Shields' averred fury eminently reasonable. *See United States v. Bahr,* 33 MJ 228, 233 (CMA 1991). Finally, the nexus in time and nature between Mr. Shields' court-martial and the Shields' complaints against appellant is undeniable and tended to enhance the probative value of this evidence. *See Gray, supra* at 81. I see substantial prejudice from denying this evidence to the defense.

The majority's hyper-technical reading of the record of trial ignores the reality of appellant's court-martial. In my view, defense counsel was discouraged, if not intimidated, by the military judge from presenting a viable avenue of defense. Assuming defense counsel was not pressured into forgoing this avenue of defense, I would still vote to reverse the decision below in this case. A servicemember is entitled to be represented by a competent lawyer who can distinguish the forest for the trees. *See United States v. McCastle,* 43 MJ 438, 441 (1996) (Sullivan, J., dissenting) ("[D]efense counsel saw hoof prints and looked for a rare zebra instead of an obvious horse."). Here, a critical fact pertaining to the credibility of appellant's accusers was hidden from the members, and I can discern no reason why a diligent de-

fense counsel would allow this to happen. *See generally Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *see also United States v. Straight,* 42 MJ 244, 251 (1995) (defense counsel's decision to forgo requesting post-trial session regarding court member's discussion of pa-role eligibility held deficient). In our military-justice system, an accused should be able to put on his full defense. *United States v. Rankins,* 34 MJ 326, 336 (CMA 1992) (Sullivan, C.J., dissenting). Here, appellant was denied a fair trial.