# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class CHRISTOPHER G. PACHECO**
**United States Army, Appellant**

ARMY 20170177

Headquarters, United States Army Africa/Southern European Task Force
Joseph A. Keeler, Military Judge
Louis P. Yob, Staff Judge Advocate

For Appellant:  Theodore C. Houdek, Esquire (argued); Captain Zachary Szilagyi, JA; Theodore C. Houdek, Esquire (on brief and reply brief).

For Appellee:  Captain KJ Harris, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain Joshua Banister, JA (on brief).

26 February 2019

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

A general court-martial composed of officers and enlisted members convicted appellant, contrary to his pleas, of three specifications of assault consummated by battery and one specification of child endangerment, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 128, 134 (2012) [UCMJ].  The court-martial sentenced appellant to a bad-conduct discharge, confinement for twenty-four months, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged.

Appellant's case was referred to this court for review pursuant to Article 66, UCMJ.  Appellant assigns six errors, two of which merit discussion, and one of

which merits relief.[1]  Appellant personally submitted matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which do not warrant discussion or relief.

## I. BACKGOUND

The offenses for which appellant was convicted stem from incidents that occurred while appellant served in Vicenza, Italy.[2]  On 9 September 2015, appellant's spouse, JP, e-mailed her resume to appellant asking him to review it when he came home from work.  Rather than reviewing her resume upon arriving home, appellant went upstairs to his "man cave" and played video games.  After dinner that evening, appellant returned to his man cave.  JP eventually went upstairs to tell appellant that she was upset by his lack of attention because he had still not reviewed her resume.  When JP entered the man cave, appellant was sitting on the couch playing a video game wearing a headset to communicate with other players online.  Their four year old son, GP, was sitting by appellant watching him play.  JP yelled at appellant for not paying attention to her and removed his headset.  Appellant began yelling back at JP.  He then got up from the couch, moved around a coffee table and approached her.  Appellant pushed JP, causing her to fall back and hit her head on the floor.  JP got to her feet and continued yelling at appellant.  Both appellant and JP ended up on the floor with appellant on top of her.  Appellant grabbed an extension cord and started to wrap JP's hands with it.  JP started to calm down as she heard their son tell appellant to stop.  As JP became calm, she yelled at appellant "stop, stop, I'm, calm, I'm calm."  Their son started repeating, "stop, dad. Stop, dad.  She's calm."  The incident was troubling enough to GP that he would occasionally bring it up in conversation with his parents.

On 17 January 2016, appellant and JP had friends over to watch televised sports and drink alcohol.  After their friends departed, an inebriated appellant became violent and assaulted JP by pushing her into a mirror, causing it to break.

---

[1]  Appellant's fourth assignment of error asserts that the military judge erred by admitting the statements "[GP] in the background yelling 'stop'" and GP telling appellant "stop, dad.  Stop, dad.  She's calm."  We disagree.  Applying the "Tipsy Coachman Doctrine" we find the military judge arrived at the correct result, even if for the wrong reason. *See United States v. Carista*, 76 M.J. 511 (Army Ct. Crim. App. 2017); and Military Rule of Evidence [Mil. R. Evid.] 803(3).

[2]  After arraignment, appellant was charged with willfully disobeying a superior commissioned officer in violation of Article 90, UCMJ, and obstructing justice in violation of Article 134, UCMJ.  These additional charges were purportedly referred to this court-martial.  However, appellant did not enter pleas to the additional charges, they were not presented to the members for findings, and the record is otherwise silent as to the disposition of these charges.

He then pushed JP onto the mirror's broken glass and eventually pinned her to the ground. Appellant claims to have blacked out during most of the assault and does not recall pushing her into the mirror or onto the broken glass.

On 31 July 2016, JP and appellant were lying in bed with their son, GP. Appellant told GP, "your mom is going to take you away from me and I'm never going to see you again." Appellant then got up and briefly left the room. Upon his return, appellant got into bed and told GP how much he loved him. This upset JP, who believed appellant's words and actions were confusing to GP. This prompted JP to reach over appellant in an effort to grab GP and take him back to his own room. Appellant resisted and pushed JP away. Appellant then got up and grabbed JP, forced her out of the room, and carried her downstairs. Although JP resisted, appellant eventually forced JP, who had nothing on but a pair of shorts, onto the patio and locked her out of the house. JP remained outside until appellant let her back in the house.

## II. LAW AND DISCUSSION

### A. Factual Sufficiency – Child Endangerment

In one assignment of error, appellant alleges that the evidence is legally and factually insufficient to support his child endangerment conviction, Specification 1 of Charge II. We agree the evidence is factually insufficient.

In Specification 1 of Charge II, appellant was charged with the offense of child endangerment, Article 134, UCMJ, based on his assaulting JP in the presence of GP. As to this offense the panel was instructed on the following elements:

> (1) That at or near Vicenza, Italy, on or about 9 September 2015, the appellant had a duty for the care of [GP];
>
> (2) That [GP] was then under the age of 16 years;
>
> (3) That at or near Vicenza, Italy, on or about 9 September 2015, the appellant endangered [GP's] mental health through culpable negligence by unlawfully pushing [JP] to the ground with his hands and wrapping an orange extension cord around [JP's] wrist with his hands, all in the presence of [GP]; and,
>
> (4) That, under the circumstances, the conduct of the appellant was of a nature to bring discredit upon the armed forces.

3

In reviewing the evidence contained in the record for factual sufficiency, we are concerned with the third element. This element has two requirements: "(1) the accused's acts or omissions must endanger the child's safety; and (2) the accused's mental state must be that of 'culpable negligence'" *United States v. Plant,* 74 M.J. 297, 300 n. 4 (C.A.A.F. 2015); *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], pt. IV, para. 68a.b.(3). As to the first requirement, the government had the burden to establish that appellant's misconduct subjected GP to a "reasonable probability" of harm.[3] *Plant* 74 M.J. at 300; *MCM*, pt IV, para 68a.c.(5). Based on our review of the record, we are not convinced the government met its burden.

Although there was no direct testimony, it is a reasonable inference from the record that GP saw his father abuse his mother.[4] It is also reasonable to infer from the record that appellant's culpable actions might cause mental harm and anguish to GP. The government points to, and we note, GP's young age, his statements during the incident, and that he brought the incident up in later conversations with his parents. Perhaps it would have been enough if the government supplemented these inferences with expert testimony explaining the likelihood and severity of the mental harm that GP would suffer from watching his father abuse his mother.[5] But here, even after making allowances for not having viewed the trial, we are not convinced beyond a reasonable doubt of appellant's guilt for child endangerment. *See United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

### B. The Military Judge Erred by Not Allowing Prior Specific Instances of Violence

In another assigned error, appellant asserts that the military judge erred in denying appellant the ability to cross-examine JP on prior specific instances of violence and to present evidence of prior instances of violence through defense

---

[3] In *Plant* our superior court noted "the threshold risk for 'endanger' is conduct that subjects the child to a 'reasonable probability,' not merely a reasonable possibility, of harm." 74 M.J. at 300 n.4.

[4] The government did not call GP to testify and, consequently, the record is devoid of his account of or reaction to the assault.

[5] We do not imply that such testimony is necessary in every instance where the charged offense of child endangerment stems from an incident of domestic violence. Some offenses speak for themselves where the instance of domestic violence is so aggravating in nature that no other evidence is needed to support a conclusion that such acts would have resulted in a reasonable likelihood of mental harm or suffering to an observing child. This, however, is not such a case.

witnesses other than the accused. Appellant claims these errors prevented him from corroborating his own testimony as to his right to self-defense.[6] We disagree.

Appellant sought to introduce JP's character for violence by several means. For purposes of our analysis, we categorize them as follows.

First, appellant introduced JP's character through opinion and reputation testimony. Consistent with Military Rule of Evidence [Mil. R. Evid.] 405(a), the military judge allowed this testimony.

Second, appellant sought to introduce JP's specific acts of violence toward appellant. The military judge never ruled this evidence would be inadmissible to support appellant's claim that his use of force in self-defense was reasonable. However, the military judge would not allow the defense to introduce this evidence until after the appellant put his subjective beliefs at issue. Thus, appellant was not allowed to cross-examine JP during the government's case-in-chief on prior specific acts of violence.[7] The military judge did, however, allow appellant to testify to those same acts when testifying in the defense case-in-chief.

Third, appellant tried to introduce through his testimony evidence that JP hit GP and her stepson, NP, on two separate occasions.[8] Again, this evidence was offered to support appellant's claim that his use of force in self-defense was reasonable. The military judge sustained the government's objection to this testimony, determining that the evidence was not relevant, and that even if marginally relevant, the probative value of such testimony was substantially outweighed by the danger of unfair prejudice.

With these broad categories outlined, we now address appellant's claim of error.

---

[6] Appellant raised the issue of self-defense as to the charges of assault consummated by battery in Specifications 1 and 4 of Charge 1.

[7] The military judge also ruled that specific acts of violence by JP would be admissible if the government introduced evidence that JP was a peaceful person. *See* Mil. R. Evid. 404(a)(2)(B).

[8] Appellant witnessed the incident involving GP. Appellant did not witness, but was aware of, the incident involving NP.

*1. Cross-Examination - JP's Prior Specific Instances of Violence*

Appellant claims the military judge erred by denying appellant the right to cross-examine JP regarding her prior acts of violence towards appellant.[9]  Appellant argues that self-defense was sufficiently raised through the cross-examination of JP when she confirmed her aggressive behavior towards appellant prior to the assault of September 9, 2015, and this permitted cross-examination by contradiction through questions about specific acts of violence and abusive conduct.  Appellant further contends that by denying appellant the right to cross-examine JP regarding these specific instances, the military judge denied appellant an opportunity to corroborate his testimony.  We find no merit in appellant's assertions.

The military judge controls the mode and order of examining witnesses and presenting evidence.  *See* Mil. R. Evid. 611.  Trial judges have broad discretion to impose reasonable limitations on cross-examination, "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see, e.g.*, Mil. R. Evid. 303 (degrading questions); *United States v. Velez*, 48 M.J. 220, 226 (C.A.A.F. 1998).  Trial rulings limiting cross-examination are reviewed for an abuse of discretion.  *United States v. Shaffer,* 46 M.J. 94, 98 (C.A.A.F. 1997) (citing *United States v. Buenaventura*, 45 M.J. 72, 79 (C.A.A.F. 1996)).[10]  Under that analysis, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo.  *United States v. Gallagher*, 66 M.J. 250, 253 (C.A.A.F. 2008).  The abuse of discretion standard is strict, calling for more than a mere difference of opinion.  The challenged action must be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous." *United*

---

[9]  Appellant also seems to assert for the first time on appeal that cross-examination of JP as to her prior acts of violence was relevant to impeach JP's character for truthfulness.  We need not address the merits of this argument because appellant did not present this character trait as a specific ground for his line of inquiry at trial.  Rather, the record clearly indicates appellant's trial defense counsel informed the military judge the purpose of the questioning had "nothing to do with [JP's] character."  Rather, defense counsel asserted "it has to do with first and second prong of the self-defense."  By specifically disclaiming JP's character as a specific ground for seeking cross-examination on specific instances of JP's prior violent acts, appellant's defense counsel did not preserve this issue for appellate review.  *See* Mil. R. Evid. 103(a)(2); *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017).

[10] The Confrontation Clause of the Sixth Amendment to the Constitution provides that an accused enjoys the right to confront the witnesses against him in a criminal proceeding.  "While the right to cross-examination is broad, it is not unlimited in scope; nor can it be conducted without due regard for applicable rules of evidence." *Velez*, 48 M.J. 226 (citations omitted).

*States v. Miller*, 46 M.J. 63, 65 (1997); *United States v. Travers*, 25 M.J. 61, 62 (1987); *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000).

We find the military judge did not abuse his discretion in denying appellant's attempt to cross-examine JP about prior acts of violence. Military Rule of Evidence 404(a)(2)(B) states "the accused may offer evidence of an alleged victim's pertinent trait," and Mil. R. Evid. 405(b) states "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proven by relevant specific instances of the person's conduct." These rules, when read in conjunction, permit an accused to establish a victim's pertinent character trait through specific acts. Thus, to admit specific acts of violence during the cross-examination of JP required appellant to jump through two hoops: first, appellant needed to show that JP's character for violence was an "element" of self-defense; second, appellant needed to put "self-defense" at issue.

Here, the military judge was rightfully concerned that the evidence in question had both probative and prejudicial components. While appellant's awareness of JP's prior violence was relevant to his subjective belief about force, it was not admissible to prove JP's character. Appellant was not allowed to introduce specific acts of violence by JP to prove she was a bad person or was someone who deserved to be assaulted.

Instead, the prior acts of violence were only relevant to the extent they had an effect on appellant. That is, the relevance of the prior acts testimony was entirely conditional on appellant witnessing them *and* understanding them in a manner that supported his claim of self-defense. In the midst of the government's case-in-chief, appellant had not yet put self-defense fully at issue. To put a defense at issue requires some evidence of *every* element of the defense. *United States v. Davis*, 53 M.J. 202, 205 (C.A.A.F. 2000). Only later, when appellant took the stand, was his subjective state of mind placed in front of the fact finder.

Thus, we find the military judge wisely prohibited the defense from introducing specific acts of violence by JP until the defense had fully committed to a theory of self-defense. While Mil. R. Evid. 104(b) allows for the conditional admission of evidence, when the evidence is otherwise prejudicial, the military judge may wisely wait until the condition has been met. The military judge did not err by waiting until appellant took the stand or the defense otherwise raised the issue during its case-in-chief.

Put differently, the military judge's ruling did not have the effect of saying "no" to the introduction of JP's prior acts. Rather, the military judge's ruling was

just "not yet." And, later, consistent with his ruling, once appellant took the stand, the military judge allowed appellant to testify to prior specific acts by JP.[11]

### 2. Offering Prior Specific Acts of Violence through Defense Witnesses

Appellant also argues the military judge erred by not allowing other defense witnesses to testify about JP's prior acts of violence, which would have corroborated appellant's testimony. Appellant claims this decision was in contravention of the Court of Appeals for the Armed Forces holding in *United States v. Dobson* and, consequently, denied him the ability to corroborate his own testimony. 63 M.J. 1, 19 (C.A.A.F. 2006) (holding military judge's exclusion of the testimony of two witnesses that could corroborate incidents of the victim's verbal abuse of accused, where the accused raised the issue of self-defense, was an abuse of discretion). We disagree with the factual predicate of appellant's claim.

During the defense case-in-chief, defense counsel only had appellant testify about JP's prior acts of violence. Defense counsel did not seek to have other witnesses testify to JP's prior acts for the purpose of corroborating or buttressing appellant's testimony. Rather, defense counsel called two witnesses to offer their opinion as to JP's reputation for violence for the purpose of corroboration. Additionally, the military judge earlier specifically permitted appellant to have defense witnesses testify about JP's prior acts of violence for the purposes of contradiction if JP opened the door.

Because defense counsel never sought to have other defense witnesses testify about JP's prior acts of violence for the purpose of corroboration, there was no ruling by the military judge on this matter one way or the other. Because there is no ruling for us to review, we cannot assess error and need not address the application of our superior court's holding in *Dobson*.

### CONCLUSION

Having determined Specification 1 of Charge II is factually insufficient, the finding of guilty to Specification 1 of Charge II is set aside and that specification is DISMISSED. The remaining findings of guilty are AFFIRMED.

---

[11] While we recognize that appellant's uncorroborated testimony regarding JP's prior acts of violence toward him could be construed as self-serving, we note that appellant's defense counsel did not seek to recall JP or have other defense witnesses testify to her prior acts of violence for the purpose of corroborating appellant's testimony. We do not address whether a decision not to seek such corroboration amounted to a deficiency in performance because appellant has not alleged ineffective assistance of counsel.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In conducting a sentence reassessment, a Court of Criminal Appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales,* 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "[I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *Sales*, 22 M.J. at 308.

In evaluating the *Winckelmann* factors, we note a significant change in the penalty landscape. With the dismissal of the offense of child endangerment, Article 134, the maximum term of confinement of 30 months faced by the appellant is reduced to 18 months. We note, appellant's sentence of confinement to 24 months exceeds this new maximum.

While appellant was sentenced by a panel of officers and enlisted members, we have extensive experience dealing with cases involving assaults consummated by battery in violation of Article 128. Moreover, the gravamen of appellant's criminal conduct within the original offenses remains substantially the same, as appellant remains convicted of assaulting his spouse on three separate occasions, one of which occurred in front of his four-year-old son.

In reassessing the sentence, we AFFIRM only so much of the sentence as extends to a bad-conduct discharge, confinement for fifteen months, and reduction to the grade of E-1. We conclude, pursuant to Article 66, UCMJ that such a sentence is appropriate for the offenses; and we additionally conclude that such an affirmed sentence is no greater than would have been awarded by a court-martial for the charge and specifications that we hereby affirm. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside and dismissed by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge WOLFE and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

.